Barlock, Appellant, *v.* Orient Coal & Coke Co. et al.

Argued April 2, 1935. Before FRAZER, C. J., SIMPSON, KEPHART, MAXEY, DREW and LINN, JJ.

*Nicholas Unkovic,* for appellant.

*Samuel G. Wagner,* with him *George Y. Meyer,* for appellees.

OPINION BY MR. JUSTICE KEPHART, May 13, 1935:

The injured employee received compensation under paragraph "c" of the act at the maximum rate for a period of 215 weeks for the loss of his left leg. He claims compensation for an additional period of at least three hundred weeks for partial disability arising in the same injury, to his right leg, separate, apart and distinct from the loss of his left leg. This compensation was fixed by the board at 25% loss in earning power.

The question may be stated to be: Where an injured employee is compensated under paragraph "c" for the loss of a leg, and compensation is claimed under paragraph "b" for partial disability, separate and distinct from the disability under paragraph "c," does the period of three hundred weeks mentioned in paragraph "b" begin to run from the tenth (now seventh) day after the accident, or does it begin to run after the expiration of the period specified in paragraph "c"? Does the three hundred week period mentioned run concurrently with the periods fixed in paragraph "c," or do the periods run consecutively by tacking the three hundred weeks on to the number of weeks mentioned in paragraph "c"?

The Superior Court held the periods run concurrently (114 Pa. Superior Ct. 228). The question is determined by ascertaining the legislative intent and the date when compensation is payable, if at all, for the various classes.

After a very careful consideration of the question we agree with Judge CUNNINGHAM in the reasons stated in the opinion of the Superior Court. However, we wish to point out some further reasons which sustain the correctness of the conclusions of that court.

The legislature under the Act of June 26, 1919, P. L. 642, which governs the instant case, in providing for

compensation for injuries received in the course of employment, had one grade of disability that was (apart from death) all inclusive; that was stated in the act, "total disability." The highest grade of compensation to be received under that act was provided in paragraph "a" for total disability. It was reflected in the maximum number of weeks (500) in which compensation was to be paid, and the amount of compensation to be paid was not to exceed $12 a week (increased to $15 by the Act of April 13, 1927, P. L. 186). Total disability in the opening part of section 306 includes "all disability." It was the legislative thought that, apart from death, nothing in the act could exceed total disability, and when for such disability the legislature fixed the maximum payments and a total period during which compensation could be paid, it set the limits for all disability. It was not intended under this act that compensation for other disabilities or injuries should exceed that total.

Under appellant's construction of the act, it would be possible for an employee to be entitled to compensation at the maximum rate of $12 a week for 1,110 weeks, or $13,320; under such construction he would be compensated more than twice that given for total disability both in the gross sum paid and in the number of weeks in which paid. It is obvious that such a result was never intended; a claimant, as was said in Baffi v. Lehigh Valley Coal Co., 87 Pa. Superior Ct. 579, "cannot be more than totally disabled, and when the fact appears that total disability has been compensated for, he cannot tag on another liability." See also Sustar v. Penn Smokeless Coal Co., 85 Pa. Superior Ct. 531, affirmed 285 Pa. 395.

This thought is strongly evidenced in paragraph "c," for it provides that "for the loss of any two or more members . . . not constituting total disability" compensation shall be as there specified, but that, unless otherwise determined by the board, the loss of both hands, arms, legs, feet, or eyes shall constitute total disability, and be compensated as such. The clear inference is that if such

loss of more than one member constitutes total disability it shall be compensated under that paragraph—(a)—dealing with total disability, whether the compensation ordinarily provided in (c) for such injuries would be greater or less. And, in obedience to the legislative intention as there expressed, it has frequently been held that compensation for total disability under paragraph "a" and compensation for permanent injury under paragraph "c" run concurrently.

The legislature also provided for partial disability (paragraph "b"); this was further divided, or a third class was created (paragraph "c") termed "compensation for permanent injuries." These sections have been discussed,[1] and the difference in the award given for total disability under "a" and partial disability under "b" is a matter of time and the standard of payment not to exceed the maximum in paragraph "a."

The amount of weekly compensation fixed under paragraphs "a" and "c" are the same; the time during which it is to be paid is different. The standard for compensation fixed in paragraph "b" for partial disability is different in time and amount from that mentioned in "a" and "c." The question now raised is: From what time does compensation begin to run? That time has been stated in the act under "a," "b" and "c."

Under "a" compensation is given for "the first 500 weeks after the tenth day [now reduced to the seventh day] of total disability"; under "b" for "300 weeks after the tenth [now seventh] day of such partial disability." Under "c" the compensation is computed on the wages at the time of the injury. The occasion for compensation under section 306 is an injury in the course of employment. The title of the act so reads: "Damages for injuries received by an employee in the course of employment. . . ." Section 306 begins: "The following schedule or compensation is established for injuries. . . ."

---

[1] Lente v. Luci, 275 Pa. 217.

But, while the compensation awarded under the act is for disability for injuries received in the course of employment, the definite thing that gives rise to compensation is the injury suffered by the employee, and therefore, in computing compensation, the time of disability from an injury must relate back to the occasion when that happened—the date of the injury.

Paragraph "a" speaks of the "injured employee" and the "time of the injury." Paragraph "b" speaks of the "injured employee" and paragraph "c" also of "the time of the injury." While section 306 (b) states that the three hundred weeks shall begin to run after "the tenth (now seventh) day of such partial disability," it is plainly evident from that section that the beginning day referred to is the time of the injury. In that paragraph, as in paragraph "a," in fixing the standard of compensation, section 309 of the act is referred to. That section provides that the wages in force shall be the wages "at the time of the accident." The words "after the tenth (now seventh) day of such partial disability" must have reference to what preceded it at the beginning. This could mean only the day on which the injured employee received the accident in the course of employment. We have held that compensation did not contemplate payment for separate compensable injuries to be made concurrently,[2] that is, they could not be added together; the maximum compensation for all disability was $12 (now $15) a week, and the maximum compensation for the loss of a member under paragraph "c" was $12 (now $15) a week, and the compensation provided for partial disability in 306 (b) could not be added to that under (c) though there is a difference in earning power. It is clear the effective date from which compensation can be paid in any and all classes is the tenth (now seventh) day from the accident. If then the legislature has fixed and determined the effective date at or from which payment under

[2] Baush v. Fidler, 277 Pa. 573, 578.

any one or all of the classes begins, all payments must have the same initial beginning; and as payments must relate to a single classification and cannot be pyramided, the longest time in which payment can be made is that classification that endures the longest.

We further stated in the Baush Case that to receive compensation apart from section 306 (c), for difference in earning power mentioned in section 306 (b) the partial disability must be separate and apart from and in addition to the incapacities mentioned in section 306 (c), and such partial disability must endure beyond the period mentioned in section 306 (c); as stated in Lente v. Luci, 275 Pa. 217, such "disability . . . must endure [and be compensable] beyond the time therein mentioned [in paragraph "c"]." If, as stated, the compensation fixed under section 306 (a) or section 306 (b) begins to run under the same provisions, that is, at the same time as does section 306 (c), there is no other conclusion but that the periods mentioned run concurrently. It is clear that the legislature intended that under "a," "b" and "c" compensations could not be pyramided, and, where as here, the maximum weekly compensation was paid, it covers all disability during the period paid, and where compensation is allowable under a paragraph other than that paid for, the beginning date must be the date of the injury and the number of weeks claimed must extend from that time beyond the period already paid for.

Mention has been made of our opinion in Bausch v. Fidler, 277 Pa. 573, as containing contrary definite expressions. The Superior Court has correctly stated our thought in this case. The precise problem here presented was not before the court for determination, and it was left open for future action, if the partial disability was compensable, what the rule would be that should be applied to such case. We stated it was not necessary for the board to take up that question, nor was it necessary for us to take it up; there the temporary disability existed while under treatment and resulted from the two

major injuries, and the partial disability to the wrist was not considered in connection with the law as here discussed.

The judgment of the Superior Court is affirmed.