Ingram *v.* W. J. Rainey, Inc., Appellant.

Argued April 15, 1937.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Herman M. Buck,* with him *Jos. W. Ray, Jr.,* of *Shelby, Ray & Coldren,* for appellant.

No appearance was made, nor brief filed, for appellee.

OPINION BY CUNNINGHAM, J., July 15, 1937:
The question primarily involved under the record, as

printed by the appellant employer in this workmen's compensation case, is whether there was legally competent evidence to sustain the award for total disability made to the claimant by the compensation authorities in the sum of $375, upon which judgment was entered by the court below. Counsel for the appellant, in filing their exceptions to the action of the referee and board, have injected into the case a subsidiary question to which we shall refer later.

Confining ourselves for the present to the judgment appealed from and the record upon which it is based, an examination of the testimony discloses ample competent evidence sustaining the findings by the referee to the effect that claimant, while in the course of his employment in one of the mines of appellant on January 8, 1932, sustained severe injuries to the bones, muscles and nerves of his neck when, in moving a cutting machine, his head struck the roof of the mine. Although claimant was totally disabled by these neck injuries and entitled to compensation therefor under Section 306 (a) of the Workmen's Compensation Act of June 2, 1915, P. L. 736, as amended by Section 1 of the Act of April 13, 1927, P. L. 186, 77 PS §511, no compensation agreement was executed by the parties nor did claimant file his petition with the board for compensation for this total disability until April 27, 1932.

Claimant attempted to return to work on January 21st, but was obliged to quit after working "a couple of hours." The court below inadvertently states in its opinion that he continued to work and earned his usual wages until February 2d, when he met with another accident which resulted in the permanent loss of the use of the third and fourth fingers of his left hand. The testimony (20a, 24a) is directly to the contrary and it is stated in appellant's history of the case that claimant "returned to work on January 21, 1932, and worked only a couple of hours, and then did not work again un-

til February 2, 1932." The disability resulting from the injuries to claimant's neck was entirely separate, apart and distinct, from any disability resulting from the injuries to his fingers (*Lente v. Luci*, 275 Pa. 217, 119 A. 132), and it was upon the disability attributable solely to his neck injuries that claimant based his petition and his evidence at the three hearings before the referee. Claimant had done no work subsequent to February 2, 1932, up to the time of the last hearing before the referee—August 18, 1933,—and contended that the disability which had prevented him from working was entirely due to the injuries to his neck, inflicted in the accident of January 8, 1932.

The defense interposed by appellant was that the admittedly abnormal condition of claimant's fifth and sixth cervical vertebraes was attributable to a chronic osteoarthritis. There was conflicting medical testimony upon this issue and the referee selected an impartial expert to examine claimant. When the evidence given by the medical witnesses for each side is read in connection with that of the impartial expert, sufficient competent testimony is found to support the following finding of the referee: "The claimant at the time of the accident had a pre-existing osteoarthritis, which was aggravated by the accident, totally disabling him for a period of six months, ......after which time his total disability ceased."

An award was accordingly made by the referee (and affirmed by the board) of compensation for total disability at the rate of $15.00 a week from January 15 to July 7, 1932,—a period of twenty-five weeks—and in the total sum of $375. Judgment was entered in the court below for this amount on April 13, 1936, and this appeal by the employer followed.

The complication introduced into the case by appellant arises out of averments in its exceptions, as filed below, that upon some unspecified date subsequent to

the accident of February 2, 1932, in which claimant's fingers were injured, an agreement was entered into between appellant and the claimant under which he was paid compensation at the rate of $15.00 a week for a period of thirty-five weeks for the permanent loss of the use of his fingers, as provided for in section 306 (c) of the statute, as amended, 77 PS §513. This agreement was not offered in evidence, nor is there any averment that it was ever approved by the board. The only evidence before the referee, or contained in this record, with respect to such an agreement reads: "Q. When was the next time you did any work? A. February 2d. Q. Then how long did you work? A. I was in there quite a while waiting on something to do and when I got employment it was not over 15 minutes until I was on my way out again. Q. Because of what? A. I injured my left hand. Q. Compensation was agreed upon in that case which was to be heard today? A. Yes. By the Referee: Q. When did that disability terminate? By Mr. J. W. Ray—Counsel for Defendant: It is agreed that he is to be paid 35 weeks for the permanent loss of the third and fourth fingers of the left hand. He was paid up to date. By the Referee: Q. Is that correct? A. Yes."

It is averred in appellant's exceptions that the thirty-five week period for which claimant was paid under section 306 (c) began February 10, and ended October 11, 1932. If so, there was an overlapping of the respective periods between February 10 and July 7, 1932—approximately five months—during which claimant would receive $30.00 a week, if the award is sustained. Appellant now contends that claimant's petition of April 28, 1932, should have been dismissed upon that ground. Its fifth exception in the court below reads: "The board erred in not dismissing the claim petition for the reason that claimant, by virtue of compensation agreement No. 2,876,657, had received compensation for a period of

thirty-five weeks for the loss of fingers sustained by him in an accident occurring February 2, 1932, while in the employ of the defendant, it appearing that the period for which such compensation was paid did not expire until after July 7, 1932."

Obviously, this exception could not have been sustained in its entirety because it ignores the compensable period between the first and second accidents— January 15 to February 10, 1932,—during which claimant was totally disabled by his neck injuries.

If we waive the failure of appellant's counsel to plead or formally prove the agreement upon which they rely and accept the admission of claimant's counsel that his client has been paid $15.00 a week for thirty-five weeks for the loss of the use of his fingers, we are confronted with an unusual, and apparently new, situation. In so far as we are informed, no appellate decision has dealt with a case in which a claimant, while totally disabled and entitled to compensation under section 306 (a), sustained injuries to another part of his person, and in the course of the same employment, which entitled him to compensation under section 306 (c). Certain general principles were, however, announced by this court and our Supreme Court in the case of *Barlock v. Orient Coal & Coke Co.,* 114 Pa. Superior Ct. 228, 173 A. 666, (Affirmed in 319 Pa. 119, 178 A. 840) which furnish a guide to the solution of the present problem. In that case the employee suffered injuries to both legs in the same accident. The injuries to his left leg resulted in the permanent loss of the use of that member and he received compensation therefor under paragraph (c) for a period of two hundred and fifteen weeks. At the end of that period he still had a separate and distinct partial disability of twenty-five per cent attributable to the injuries to his right leg. He claimed compensation for this partial disability under paragraph (b) for a period of three hundred weeks follow-

ing the expiration of the two hundred and fifteen weeks' period. The question there involved was whether the period of three hundred weeks prescribed in paragraph (b) began to run after the expiration of the definite period of two hundred and fifteen weeks specified in paragraph (c), or upon the seventh day after the accident. It was held that the periods ran concurrently and that the additional award should have been for only eighty-five weeks. See also *Olinsky v. Lehigh Valley Coal Co.*, 93 Pa. Superior Ct. 221, in which the claimant suffered from the same accident a fractured left leg and the amputation of his right foot. He claimed compensation under paragraph (a) for total disability for eight months and then under paragraph (c) for one hundred and fifty additional weeks for the loss of his foot.

We held that the statute contains no authority for adding his claim for total disability under (a) to the allowance under (c) for the loss of a member. In this connection it should be noted that the period of partial disability in the Barlock case extended beyond the fixed period under (c), while in the Olinsky case, as in the one now before us, the period of total disability expired during the running of the definite period under (c).

In support of the conclusion reached in the Barlock case it was stated, citing *Bausch v. Fidler*, 277 Pa. 573, 121 A. 507, that the statute does not contemplate payment for separate compensable injuries concurrently, i. e., added together or pyramided, and that, short of death, a claimant can never be more than totally disabled.

Applying these principles to the facts as here found by the compensation authorities, it is apparent that when claimant suffered his second accident on February 2d he was already totally disabled and entitled to compensation under (a) at the maximum weekly rate of $15.00. As conceded by his counsel he was paid $15.00

a week, under the agreement, from February 10th up to and beyond July 7th, the date upon which the referee found his total disability ended. If the judgment appealed from is affirmed, he will receive additional compensation at the rate of $15.00 a week, under the award, for the same period of five months—February 10th to July 7th,—or a total of $30.00 a week for that period. This, it seems to us, is contrary to the decisions to which we have referred. It is true that the amounts fixed by paragraph (c) are to be paid, "without considering but including all incapacity to labor that may be connected [with the loss of the member] whether such incapacity be total, partial or no incapacity at all": *Lente v. Luci,* supra. But it is equally true that $15.00 a week is the maximum amount to which claimant was entitled between February 10th and July 7th, even for the total disability then existing.

We do not say there may never be concurrent awards for separate injuries suffered on different occasions. If an employee's wages were so low that he would only be entitled under each award to the statutory minimum compensation of $7.00 a week they might be sustained. There is no express prohibition in the statute against concurrent payments, but there is a positive limitation of the amount any claimant may receive to $15.00 a week, regardless of the character or extent of his disability. Even for the loss of two or more members, "not constituting total disability," the weekly rate is not raised above $15.00, but the periods specified in (c) are aggregated. Where the loss of two or more members constitutes total disability the weekly maximum is still $15.00.

Under all the circumstances of this case, we are of opinion that the award, and judgment thereon, for total disability resulting from the injuries to claimant's neck should have been confined to the period between January 15th (the seventh day after the accident in which

they were received) and February 10, 1932, the date upon which the weekly payments of $15.00 began under the agreement. If the principal of the judgment is reduced to $15.00 a week for this period, (or $57.85 as we calculate it) claimant will have received, upon its collection, the maximum of $15.00 for each week from January 15 to October 11, 1932, i. e., from the time of his first injury to the end of the longest period involved. The judgment should be so modified by the court below and interest thereon calculated as prescribed in *Kessler v. North Side Packing Co.*, 122 Pa. Superior Ct. 565, 186 A. 404.

Judgment modified and as modified affirmed.