**WESTMORELAND REGIONAL HOSPITAL, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (STOPA), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 19, 2001.

Decided Dec. 31, 2001.

Harry W. Rosensteel, Pittsburgh, for petitioner.

A. Tereasa Rerko, Greensburg, for respondent.

Before: PELLEGRINI, Judge, FRIEDMAN, Judge, and FLAHERTY, Senior Judge.

FRIEDMAN, Judge.

Westmoreland Regional Hospital (Employer) petitions for review of the May 15, 2001 order of the Workers' Compensation

Appeal Board (WCAB) affirming, as modified, the decision of a workers' compensation judge (WCJ) to grant both the claim petition and the reinstatement petition filed by Barbara Stopa (Claimant) and to deny Employer's termination petition. Employer challenges the WCAB's order only insofar as it permits a "stacking" of Claimant's total disability benefits. We agree with Employer and modify the WCAB's order accordingly.

Claimant sustained a rotator cuff injury to her right shoulder on January 15, 1995, while working for Employer as a licensed practical nurse. As a result of this injury, Claimant received compensation pursuant to a notice of compensation payable (NCP) at the rate of $389.71 per week, reflecting an average weekly wage of $584.56.

In April of 1996, Claimant returned to modified-duty work in Employer's medical records department at a loss of wages, and, consequently, Claimant was paid partial disability benefits pursuant to various supplemental agreements with Employer. Then, on May 2, 1996, while performing her modified position, Claimant sustained an injury to her right knee. Claimant did not miss any work as a result of the right knee injury; however, while receiving physical therapy for that injury, she sustained an injury to her left knee, forcing her to leave work on October 22, 1996. In August of 1997, Claimant received a letter from Employer informing her that she had been terminated as an employee because of her continued absence from work. Claimant ultimately returned to her former modified position with Employer on March 9, 1998, under restrictions connected to both her shoulder and knee injuries.

On November 3, 1997, Claimant filed two petitions. In her reinstatement petition, Claimant alleged that total disability benefits relative to her January 15, 1995 shoulder injury should be reinstated as of September 1, 1997 because modified-duty work within her physical restrictions was no longer available to her after that date. (R.R. at 4a–5a.) In her claim petition, Claimant alleged entitlement to total disability benefits as of October 22, 1996 for her two work-related knee injuries. (R.R. at 2a–3a.) Employer filed an answer denying the critical averments of each of Claimant's petitions, (R.R. at 6a–7a), and also filed a termination petition alleging that Claimant had fully recovered from her January 15, 1995 shoulder injury as of September 10, 1997. (R.R. at 8a.) Claimant, in turn, filed an answer denying the allegations of Employer's termination petition. (R.R. at 9a.) All three petitions were consolidated for hearing before the WCJ.

On November 17, 1999, after consideration of the evidence presented, the WCJ issued a decision granting Claimant's reinstatement and claim petitions and denying Employer's termination petition.[1] Of relevance here, the WCJ concluded that Claimant sustained her burden of proving that she became disabled on October 22, 1996 as a result of a work related injury to her right knee on May 2, 1996, and the resultant work related injury to her left knee in October, 1996. Further, the WCJ concluded that Claimant established entitlement to a reinstatement of benefits as of September 1, 1997 when work no longer was available to her. (WCJ's Conclusions of Law, Nos. 4, 6, Employer's brief and Claimant's brief at A–12.) Consequently, the WCJ directed Employer to pay Claim-

---

1. The WCJ also directed payment of Claimant's medical expenses, bill of costs, attorney fees for Employer's unreasonable contest of Claimant's claim petition and interest on past

due compensation and medical bills. (WCJ's Amended Order, Employer's brief at A–18; Claimant's brief at B–4.)

ant "benefits at the rate of $356.76 per week from October 22, 1996 to March 9, 1998 and .... such partial or total disability benefits as are appropriate from March 9, 1998 into the future." Further, Employer was directed to pay Claimant "benefits at the rate of $389 .71 per week from September 1, 1997 to March 9, 1998 and .... such partial or total disability benefits as are appropriate from March 9, 1998 into the future." The WCJ also determined that Claimant was entitled to receive concurrent benefits during periods of overlapping total disability, up to the yearly maximum benefit rate for 1996, and, thus, ordered that "[t]he combination of total disability benefits for both dates of injury shall not exceed $527.00." (Employer's brief and Claimant's brief at A–1—A–14.)

Employer appealed to the WCAB, alleging that the WCJ erred in: (1) finding that Employer's contest of the petition was unreasonable; (2) finding that work was not available to Claimant; (3) miscalculating Claimant's average weekly wage for the May 2, 1996 injury; and (4) "stacking" the benefits to be paid to Claimant. (R.R. at 178a–79a.) The WCAB issued a decision on May 15, 2001, affirming the WCJ's decision as to unreasonable contest and work availability and modifying Claimant's average weekly wage for the May 2, 1996 injury to $270.00.[2] However, the WCAB failed to address the final issue raised by Employer, i.e., the propriety of "stacking"

Claimant's total disability benefits for her first and second injuries, capped at the statutory maximum. (Employer's brief at A–21—A–31; Claimant's brief at C–3—C–13.)

On appeal to this court,[3] Employer raises only this previously unaddressed issue. Specifically, Employer argues that the WCJ erred in allowing Claimant to receive total disability benefits for her January 15, 1995 shoulder injury and her May 2, 1996 knee injuries simultaneously, limiting the benefits payable only to the extent that they exceed the statutory maximum of $527.00. Employer contends that Claimant was never entitled to receive more than $389.71 per week during any period of total disability. We agree.

■ It has long been recognized that, under the Workers' Compensation Act[4] (Act), disability is synonymous with loss of earning power. *Scobbie v. Workmen's Compensation Appeal Board (Greenville Steel Car Co.)*, 118 Pa.Cmwlth.424, 545 A.2d 465 (1988), *appeal denied*, 522 Pa. 607, 562 A.2d 829 (1989). Yet, here, the WCJ appears to have lost sight of this accepted principle. Concluding that Claimant was entitled to receive concurrent payments of total disability for her separate compensable injuries, the WCJ combined Claimant's $584.56 wage loss from her pre-injury nursing position with the $270.00 wage loss suffered in her modified duty position in the records depart-

---

2. Based on Claimant's testimony that she was earning $6.75 an hour and working forty hours per week at the time of her second injury, the WCAB determined that the WCJ erred in finding that Claimant was earning $535.11 per week in her modified position, entitling Claimant to $356.76 per week in benefits. Accordingly, the WCAB modified the WCJ's decision to grant Claimant benefits for her second injury based upon an average weekly wage of $270.00. Henceforth, for purposes of this opinion, we will use this $270.00 figure even when referring to the WCJ's decision.

3. Our scope of review is limited to determining whether an error of law was committed, whether constitutional rights were violated or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

4. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041.4, 2501–2626.

ment; thus, the WCJ granted Claimant benefits based on a loss of earning power of $854.56 per week during the period of overlapping disability. As a result, the WCJ directed Employer to pay Claimant compensation in the amount of $527.00 per week, the maximum benefit payable under the Act, notwithstanding the fact that Claimant never had the earning power with Employer that, if lost, would result in a compensation rate equal to the maximum compensation allowable by law.

In calculating Claimant's benefits in this fashion, the WCJ failed to recognize that the $270.00 per week earned by Claimant at the time of her second injury did not represent additional earning power separate and apart from that related to her initial injury; rather, it signified the reduced earning power that she had as a result of that first injury. By mischaracterizing Claimant's reduced earning power as additional earning power, the WCJ ultimately compensates Claimant twice for losing the same modified job. Further, by allowing Claimant to receive concurrent awards for overlapping total disabilities, the WCJ simply ignores the fact that, as of October 22, 1996, Claimant was totally disabled and, thus, incapable of performing *any* work. As such, she had no current earning capacity at the time of the September 1, 1997 reinstatement. It stands to reason, and the courts have long held, that, short of death, a claimant can never be more than totally disabled. *See, e.g., Barlock v. Orient Coal & Coke Co.,* 319 Pa. 119, 178 A. 840 (1935); *Ingram v. W.J. Rainey, Inc.,* 127 Pa.Super. 481, 193 A. 335 (1937); *Baffi v. Lehigh Valley Coal Co.,* 87 Pa.Super. 579 (1926). Yet, in granting the award here, the WCJ assumes that Claimant is totally disabled, twice and at the same time, from her employment with Employer. This cannot be. Because Claimant's maximum wages, or earning power, with Employer never exceeded her pre-injury average weekly wage of $584.56,[5] the greatest compensation rate for total disability based upon that loss of earning power is $389.71. The WCJ erred in awarding benefits up to the yearly maximum benefit rate of $527.00 for overlapping periods of total disability.

Employer contends that the WCJ erroneously treated this case as one falling under section 322 of the Act, 77 P.S. § 677, which is relevant where the claimant is injured and totally disabled while employed by one employer and recovers sufficiently to return to modified duty work *with a different employer* and then sustains a second work-related injury that renders the claimant totally disabled.[6] In that situation, we have held that the claimant is entitled to receive compensation for both partial and total disability for the separate injuries concurrently, provided

5. Under certain circumstances, an employer may be liable for payment of compensation in an amount greater than that which normally would be generated by the wages it paid to an employee. Where an employee is working under concurrent contracts of employment with two or more employers, the employee's wages from all such employers are considered as if earned from the employer liable for compensation. Section 309 of the Act, 77 P.S. § 582(e). Here, Claimant never had concurrent employment, i.e., earning power with another employer.

6. Whether or not this explains the WCJ's improper stacking of benefits, we agree with Employer, as does Claimant, (*see* Claimant's brief at 9), that section 322 of the Act is inapplicable in the present case. That section provides:

It shall be unlawful for any employee to receive compensation under this act if he is at the same time receiving workers' compensation under the laws of the Federal Government or any other state for the same injury. Further, it shall be unlawful for an employe receiving compensation under this act simultaneously *from two or more em-*

the amount payable does not exceed the maximum benefit payable under the Act. *See, e.g., Reliable Foods, Inc. v. Workers' Compensation Appeal Board (Horrocks),* 660 A.2d 162 (Pa.Cmwlth.1995). As we reasoned in *Reliable Foods,* when the first injury resolves into partial disability because the claimant is capable of returning to the workforce, but with a reduced earning capacity, it is logically sound to allow a claimant to receive benefits for both the partial disability and the subsequent total disability, so long as the maximum rate is not exceeded, because, had it not been for the claimant's first partial disability, he or she would have been receiving a higher wage when the claimant was subsequently totally disabled. *Id.*

Recently, in *Trenton China Pottery & AIG Claims Service, Inc. v. Workers' Compensation Appeal Board (Mensch and Public Service Mutual),* 773 A.2d 1265 (Pa. Cmwlth.2001), we carried this analysis a step further. There, the claimant was injured and totally disabled and, after returning to light-duty work *with the same employer but with a different insurer,* he sustained a second totally disabling work-related injury. As in *Reliable Foods,* we allowed the claimant to receive compensation for both injuries concurrently, properly apportioning the claimant's wage loss benefits between the two responsible insurers.

■ What is important to point out, however, is that, in both *Reliable Foods* and *Trenton China Pottery,* the claimants received no more in benefits than would reflect their loss of pre-injury earning power. That is, the claimants' combined benefits were limited, not merely by the maximum rate allowed under the Act, but also by their respective pre-injury average weekly wage. We believe the confusion lies in the phrasing often used by the courts that the Act does not proscribe receipt of simultaneous workers' compensation entitlements so long as the total compensation does not exceed the statutory maximum allowable benefit. A more precise statement of the law would be that the Act does not proscribe receipt of simultaneous workers' compensation entitlements so long as the total compensation, *based on the claimant's pre-injury average weekly wage,* does not exceed the statutory maximum allowable benefit.[7] Thus, in *Reliable Foods* and *Trenton China Pottery,* the claimants' entitlement to total disability was recognized as the result of a combination of work-related injuries, and the award of benefits, *based on the claim-*

---

ployers or insurers during any period of total disability to receive total compensation in excess of the maximum benefit under this act. Nothing in this section shall be deemed to prohibit payment of workers' compensation on a pro-rata basis, where an employe suffers from more than one injury *while in the employ of more than one employer:* Provided, however, That the total compensation paid shall not exceed the maximum weekly compensation payable under this act: And, Provided further, That any such pro-rata calculation shall be based upon the earnings by such an employe *in the employ of each such employer* and that all wage losses suffered as a result of any injury which is compensable under this act shall be used *as the basis for calculating the*

total compensation to be paid on a pro rata basis.

Section 322 of the Act, added by section 13 of the Act of July 2, 1993, P.L. 190, 77 P.S. § 677 (emphasis added). Clearly, section 322 deals solely with situations arising when a claimant is entitled to receive workers' compensation from more than one source. That is not this case.

7. For this reason, we reject Claimant's contention that *Varghese v. Workmen's Compensation Appeal Board (M. Cardone Industries),* 132 Pa.Cmwlth.482, 573 A.2d 630 (Pa. Cmwlth.), *appeal denied,* 527 Pa. 659, 593 A.2d 429 (1990), is controlling precedent which requires that we affirm the WCJ's award of benefits to Claimant. Claimant relies on *Varghese* for the proposition that a

*ants' pre-injury wages*, was properly apportioned between the responsible employers/insurers. By contrast, if the WCJ's decision in this case were to stand, Employer here would have to pay Claimant benefits based on a wage loss that far exceeded any amount she ever earned prior to her injury.[8]

■ We recognize, however, that, like the claimants in *Reliable Foods* and *Trenton China Pottery*, Claimant's total disability resulted from a combination of both her work-related injuries. Claimant's lower

wage from her job in the medical records department represented a reduced earning power attributable to her 1995 shoulder injury. Because Claimant was not working at her full earning capacity for Employer in 1996, she was not limited to the loss of earnings for the modified job alone when her subsequent knee injury forced her to leave that position in October of 1996. At that time, residuals from each of Claimant's work-related injuries contributed to her over-all total disability.

Accordingly, we vacate the order of the WCAB insofar as it permits a "stacking" of

---

claimant who sustains two separate and distinct injuries *with the same employer* is entitled to receive concurrent benefits for her combined loss of earning power from both of her work-related injuries up to the maximum yearly benefits allowed. According to Claimant, consistent with this authority, this court should affirm the WCAB and WCJ in awarding Claimant benefits in the amount of $527.00, the maximum benefit payable under the Act. The flaw in Claimant's argument is readily apparent. Claimant may be entitled to receive concurrent benefits for her combined loss of earning power from both of her work-related injuries, up to the maximum yearly benefits allowed; however, as discussed, Claimant's earning power with Employer never reached an amount that, if lost, would warrant payment of compensation at the maximum statutory rate.

Moreover, contrary to Claimant's contention, *Varghese* expressly limits the amount of compensation due to a claimant by relating benefits to the claimant's wage loss. In *Varghese*, the claimant sustained an orthopedic injury in the course of his employment and received compensation until he returned to work and signed a final receipt. Subsequently, the claimant suffered a work-related pulmonary problem which ultimately required him to stop working for the employer. The claimant then filed a claim petition with respect to his pulmonary illness as well as a petition to set aside the final receipt in connection with his orthopedic injury. The WCAB overturned the initial grant of overlapping awards pursuant to both petitions and suspended compensation for the pulmonary problem based on the claimant's receipt of compensation at a higher rate for his orthope-

dic injury. We affirmed, rejecting the claimant's argument that he should be entitled to collect full benefits under the two separate claims. In doing so, we first acknowledged that "disability" is synonymous with loss of earning power for purposes of the Act and then stated:

> Sections 306 and 309 of the Act, 77 P.S. §§ 511–513, 582, indicate that *the amount of compensation due to a claimant is limited by relating it to the claimant's average weekly wage*. In *Ingram*, more than fifty years ago, the Superior Court held that the Act contains positive limitations on the amount that a claimant may receive, regardless of the character or extent of the disability. Therefore, although the claimant sustained injuries on two separate occasions, each of which rendered him totally disabled, the court concluded that, even though the claimant's periods of disability overlap, the claimant could not receive more than the maximum amount proscribed by the Act. In this case, like *Ingram*, the claimant's periods of disability overlap. Therefore, the [WCAB] properly suspended compensation for the claimant's pulmonary problem because otherwise [the] claimant would receive more than the amount of compensation allowable by the Act.

*Id.* at 633–34 (emphasis added, citation omitted).

8. In fact, although an injured employee only is entitled to sixty-six and two-thirds percent of pre-injury wages as compensation for total disability, section 306(a) of the Act, 77 P.S. § 511, Claimant's award of $527.00 in wage loss benefits almost would equal her pre-injury wage of $584.56.

total disability benefits, and we modify the order to reflect that, for the period from October 22, 1996 to March 9, 1998, Claimant is entitled to receive total disability at the rate of $389.71 per week, and she is entitled to such partial or total disability benefits as are appropriate from March 9, 1998 into the future.

### ORDER

AND NOW, this 31st day of December, 2001, the order of the Workers' Compensation Appeal Board, dated May 15, 2001, is hereby modified as set forth in the foregoing opinion.