**FAULKNER CADILLAC, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (TINARI), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 20, 2003.
Decided Sept. 4, 2003.

 

Martin S. Coleman, Media, for petitioner.

Lawrence D. Levin, Jenkintown, for respondent.

BEFORE: COLINS, President Judge, FRIEDMAN, Judge, and FLAHERTY, Senior Judge.

OPINION BY JUDGE FRIEDMAN.

Faulkner Cadillac (Employer) petitions for review of the February 12, 2003, order of the Workers' Compensation Appeal Board (WCAB) that affirmed the decision of a workers' compensation judge (WCJ) granting the claim petition for specific loss

benefits filed by Mark Tinari (Claimant). We affirm.

On July 13, 1993, Claimant sustained a work-related injury in the nature of chemical burns to both hands, and Employer acknowledged liability for the injury by way of a notice of compensation payable (NCP). Claimant returned to work with no loss of earnings on August 23, 1993, and benefits were suspended pursuant to a supplemental agreement. Claimant suffered a second work-related injury, a concussion, on April 19, 1994. Pursuant to an NCP dated June 13, 1994, Claimant began receiving weekly compensation of $421.60.

On December 23, 1996, Claimant filed a claim petition seeking compensation for the loss of the use of both hands due to the July 13, 1993, injury. Employer filed a timely answer and the matter was assigned to a WCJ.[1]

Claimant testified on his own behalf, and both parties presented medical evidence. The WCJ accepted Claimant's testimony as credible, and he found the testimony of Claimant's medical witnesses to be credible and more persuasive than the testimony of Employer's medical experts. (WCJ's Findings of Fact, Nos. 27–28). Based on those determinations, the WCJ found that Claimant lost the use of both hands for all practical intents and purposes due to his July 13, 1993, injury. The WCJ awarded Claimant 735 weeks of specific loss benefits at the rate of $421.52 per week, less credit for total disability payments already made for the 1993 injury, to be paid simul-taneously with the total disability payments for Claimant's 1994 injury.

Employer appealed to the WCAB, arguing that Claimant's petition was barred by the applicable statute of limitations, that the WCJ's findings were not supported by substantial evidence, that the WCJ's decision was not a reasoned decision and that the WCJ erred by applying an incorrect legal standard in determining that Claimant established a specific loss. Employer also asserted that the WCJ erred in ordering simultaneous payment of compensation for Claimant's separate injuries, where the total of the two awards exceeds the maximum weekly compensation payable under the Workers' Compensation Act (Act).[2] Employer further argued that the WCJ's award of 735 weeks of compensation exceeds the amount payable pursuant to section 306(c) of the Act, 77 P.S. § 513. Finally, Employer asserted that the WCJ failed to issue a necessary finding as to the date on which Claimant's injury resolved into a specific loss.

The WCAB first held that the WCJ's findings were supported by the testimony of Claimant and Claimant's medical witnesses and that the WCJ applied the correct standard in determining that Claimant had suffered a specific loss. Next, relying on *Acme Markets, Inc. v. Workmen's Compensation Appeal Board (Hopiak)*, 127 Pa.Cmwlth.553, 562 A.2d 419 (1989), *appeal denied*, 525 Pa. 648, 581 A.2d 574 (1990), and *Yeager v. Workmen's Compensation Appeal Board (Schneider, Inc.)*, 657 A.2d 1372 (Pa.Cmwlth.), *appeal*

---

1. Claimant subsequently filed a penalty petition, which was consolidated for purposes of hearings before the WCJ, but is not at issue on appeal.

2. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041.4, §§ 2501–2626. The terms "maximum weekly compensation payable" and "maximum compensation payable per week," as used in the Act, mean the statewide average weekly wage, which is an amount determined annually by the Department of Labor and Industry on the basis of employment covered by the Pennsylvania Unemployment Compensation Law. Sections 105.1 and 105.2 of the Act, *added by* the act of March 29, 1972, P.L. 159, 77 P.S. §§ 25.1, 25.2.

*denied,* 542 Pa. 682, 668 A.2d 1142 (1995), the WCAB upheld the WCJ's award of simultaneous payments of specific loss and total disability benefits, despite the fact that the total of the two awards exceeds the maximum weekly compensation payable under the Act. However, the WCAB modified the WCJ's specific loss award from 735 weeks to 690 weeks of compensation, to conform to the provisions of section 306(c) of the Act, 77 P.S. § 513, and remanded the matter to the WCJ for a finding as to when Claimant's injury became a specific loss.[3]

On remand, the WCJ found that Claimant lost the use of his hands for all practical intents and purposes as of June 18, 1999, and he adopted his prior decision, as modified by the WCAB. Employer appealed to the WCAB, again arguing, *inter alia,* that the WCJ failed to issue a reasoned decision, as required by section 422(a) of the Act, 77 P.S. § 834. The WCAB disagreed; relying on *Daniels v. Workers' Compensation Appeal Board (Tristate Transport),* 753 A.2d 293 (Pa.Cmwlth.), *vacated and remanded,* —— Pa. ——, 828 A.2d 1043 (No. 51 EAP 2000) (2003), the WCAB concluded that the WCJ's decision satisfied the "adequate explanation" requirement of section 422(a). The WCAB also noted that Employer did not contest the WCJ's finding concerning the date of specific loss, and it declined to address again the issues it had decided in its prior opinion.

■ On appeal to this court,[4] Employer first argues that the WCJ erred in granting Claimant relief because Claimant's petition was untimely filed. Employer relies on *Guthrie v. Workers' Compensation Appeal Board (Keystone Coal Co.),* 767 A.2d 634 (Pa.Cmwlth.2001), and asserts that section 413(a) of the Act, 77 P.S. § 772, bars Claimant's claim because Claimant filed his petition more than three years after the last payment of compensation for the 1993 injury.

Section 413(a) of the Act provides that petitions for review, modification or reinstatement must be filed within three years after the date of the most recent payment of compensation. However, section 413(a) further states that where compensation has been *suspended* based upon the claimant's earnings, benefits "may be resumed at any time during the [500–week] period for which compensation for partial disability is payable." 77 P.S. § 772. In contrast to the facts in *Guthrie,* Claimant's benefits were suspended and Claimant filed his petition within the allowable 500–week period; therefore, section 413(a) does not bar his claim.

Relying on *Ingram v. W.J. Rainey, Inc.,* 127 Pa.Super. 481, 193 A. 335 (1937), Employer next argues that the WCAB's decision conflicts with the principle that a claimant may not receive benefits that exceed the statutory maximum. In *Ingram,* the claimant suffered a work-related neck injury on January 8, 1932. Although the claimant was totally disabled from this injury, he did not file a claim petition for several months. In the meantime, the claimant attempted to return to work and,

---

**3.** The WCAB did not address Employer's arguments concerning the timeliness of Claimant's petition and that the WCJ failed to issue a reasoned decision. We note that the question of whether the WCJ issued a reasoned decision is not at issue in this appeal.

**4.** Our scope of review is limited to determining whether constitutional rights were violated, whether the adjudication is in accordance with the law or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *Leon E. Wintermyer, Inc. v. Workers' Compensation Appeal Board (Marlowe),* 571 Pa. 189, 812 A.2d 478 (2002).

in a subsequent work-related injury, the claimant suffered the permanent loss of the use of two fingers.[5] By agreement between the parties, the employer paid the claimant a total of thirty-five weeks compensation for the specific loss of the use of his fingers; the thirty-five week period began February 10 and ended October 11, 1932. Thereafter, a referee awarded the claimant total disability benefits related to the neck injury for a period that overlapped, in part, the period during which the specific loss payments were made. The employer appealed, arguing that the concurrent awards exceeded the maximum compensation allowable under the Act.

Although the court in *Ingram* acknowledged that specific loss benefits are payable whether or not a claimant suffers a resulting disability (incapacity to labor) therefrom, the court nevertheless held that the claimant's total disability award must be confined to the period prior to the commencement of payments made for the specific loss injury. The rationale in *Ingram* was that a claimant is not entitled to receive more than the statutory amount of benefits, even if he or she is entitled to concurrent awards for separate injuries; unfortunately, the result denied the claimant full benefits for each separate injury.[6]

Subsequently, in *Moran v. Glen Alden Coal Co.*, 154 Pa.Super. 608, 36 A.2d 845 (1944), the Superior Court achieved a more equitable result when it determined that payment of compensation for a specific loss injury may be postponed until the cessa-

tion of payments made for other, separately sustained, specific loss injuries. The holding in *Moran* was based upon "a clear recognition of the distinction between the rationale of clauses (a) and (b) of § 306 and that of clause (c)." *Id.* at 846. "The plain object of the legislature in enacting [section 306(c) of the Act] was to provide that employees should receive the compensation there stated upon suffering one or more of the named permanent injuries, *regardless of whether they are disabled completely, partially, or not at all.*" *Id.* at 847 (emphasis added). "[P]ayments under clause (c) are to compensate for injuries, not for incapacities as do awards under [sections 306(a) and (b)]." *Id.* at 848.

Subsequent Commonwealth Court decisions continued to acknowledge the distinction between sections 306(a) and (b), which compensate a claimant for the loss of earning power, and section 306(c), which provides for compensation regardless of whether the injury has any effect on a claimant's earning capacity. Thus, for compensation payable under sections 306(a) and (b), this court has consistently held that disability awards must be tied to, i.e., limited by, a claimant's average weekly wage. *See Westmoreland Regional Hospital v. Workers' Compensation Appeal Board (Stopa)*, 789 A.2d 413 (Pa.Cmwlth. 2001); *Yeager; Varghese v. Workmen's Compensation Appeal Board (M. Cardone Industries)*, 132 Pa.Cmwlth.482, 573 A.2d 630, *appeal denied,* 527 Pa. 659, 593 A.2d 429 (1990). The underlying rationale in these cases is that, under workers' com-

---

**5.** As in *Ingram*, the injuries suffered by Claimant in this case arose from separate, unrelated events. Therefore, section 306(d) of the Act, 77 P.S. 513, which prohibits receipt of concurrent payments for total disability and specific loss injuries *arising from the same occurrence,* does not apply.

**6.** See also *Melfi v. Dick Construction Co.,* 148 Pa.Super. 406, 25 A.2d 743 (1942), in which

the claimant was receiving compensation for a specific loss injury when he suffered a second injury that resulted in temporary total disability. The court held that the periods of disability ran concurrently and that the claimant was not entitled to receive more than the weekly maximum during the overlapping periods of disability.

pensation law, the term "disability" is synonymous with loss of earning power; because a claimant's injury may not cause more than a total loss of a claimant's earning power, a claimant may not be more than totally disabled.

■ However, it is well settled that specific loss benefits are payable without regard to a claimant's earning capacity. *Lente v. Luci*, 275 Pa. 217, 119 A. 132 (1922). Thus, this court has held that a claimant may receive specific loss benefits concurrently with awards for total disability compensation, *Acme Markets*, partial disability compensation, *Sharon Steel Corp. v. Workers' Compensation Appeal Board (Frantz)*, 790 A.2d 1084 (Pa. Cmwlth.2002), and other separate specific loss injuries. *Acme Markets.* We have acknowledged that a claimant is entitled to receive specific loss benefits *even while receiving full wages, Yeager; Acme Markets*, and we have further observed that under such circumstances, a claimant may receive a combination of wages and benefits that exceed his pre-injury earnings. *Id.*[7]

■ We are not persuaded by Employer's argument that Claimant is not entitled to receive more than the weekly maximum of compensation in this case. In *Westmoreland Regional Hospital*, we explained that the limitation of the maximum weekly compensation payable is appropriately considered only *after* benefits are computed based upon the claimant's loss of earning power. In that case, the claimant suffered two injuries during his employment with different employers. A WCJ granted the

claimant concurrent total disability awards for the separate injuries, limiting the amounts payable only to the extent they exceeded the statutory maximum. However, the court in *Westmoreland Regional Hospital* modified the awards, holding that in every case, regardless of the number of injuries or awards, wage loss compensation must accurately reflect the claimant's loss of pre-injury earning power.

Our prior decision in *Reliable Foods, Inc. v. Workmen's Compensation Appeal Board (Horrocks)*, 660 A.2d 162 (Pa. Cmwlth.1995), illustrates circumstances under which the limitation in section 322 of the Act, 77 P.S. § 677, (prohibiting simultaneous receipt of compensation from more than one employer in excess of the statutory maximum) is properly applied. In *Reliable Foods*, the claimant's first injury resulted only in partial disability, which left the claimant capable of returning to the workforce with a reduced earning capacity. The claimant then suffered a second injury, which rendered him totally disabled. The court in *Reliable Foods* affirmed the award of simultaneous payments for both partial and total disability, capped only at the statutory maximum rate, explaining that, had it not been for the first injury, the claimant would have been receiving a higher wage when the second injury occurred.

Because specific loss benefits are payable without regard to a claimant's resulting wage loss, we conclude that concurrent payments of specific loss benefits and partial or total disability compensation cannot rationally be limited by reference to a claimant's pre-injury earning power, pur-

---

7. Thus, although *Ingram* has not been expressly overruled, the ultimate result in that case has been implicitly disavowed, and a claimant's right to benefits is not extinguished as a result of a subsequent injury. For example, although section 306(d) of the Act, 77 P.S. § 513, prohibits simultaneous payments of wage loss compensation and specific loss benefits where the injuries result from the same occurrence, it furthers the legislative objective to compensate employees for specific loss injuries by ensuring that a claimant receives benefits for both injuries.

suant to *Westmoreland Regional Hospital*, or by the statutory maximum, under the analysis set forth in *Reliable Foods*.

■ Finally, Employer argues that the WCJ applied an improper "industrial use" standard in determining whether Claimant suffered a specific loss, and Employer asserts that Claimant's evidence does not satisfy the applicable standard for establishing a specific loss injury. We disagree.

■ The test applied to determine a claimant's entitlement to specific loss benefits is whether the claimant has suffered the permanent loss of use of the injured member for all practical intents and purposes. *Roadway Express, Inc. v. Workmen's Compensation Appeal Board (Palmer)*, 659 A.2d 12 (Pa.Cmwlth.) *appeal denied*, 543 Pa. 699, 670 A.2d 145 (1995); *Gindy Manufacturing Co. v. Workmen's Compensation Appeal Board*, 32 Pa. Cmwlth. 128, 378 A.2d 492 (1977). Whether a claimant has lost the use of a body part is a question of fact; whether a claimant has lost the use of a body part for all practical intents and purposes is a mixed question of law and fact. *Roadway Express, Inc.*

Notwithstanding references by Scott M. Fried, D.O., Claimant's medical witness, and the WCJ to Claimant's inability to use his hands for "occupational purposes,"[8] our review of the record reveals that the WCJ applied the appropriate standard in this matter. The WCJ found that: after driving, Claimant's hands become numb and stiff and he can not hold a cup of coffee or a cigarette; Claimant is not able to turn the key to unlock his car door; Claimant uses Velcro so he does not have to tie his sneakers; and Claimant uses an

oversized tube of toothpaste in order to brush his teeth. The WCJ further found that the condition of Claimant's hands has progressively worsened, causing weakness, lack of sensitivity, and an inability to grasp or perform strenuous or repetitive activities, *including normal, day-to-day activities.* (WCJ's Findings of Fact, Nos. 25, 26, 28.) Finally, the WCJ explicitly found that Claimant lost the use of both of his hands for all practical intents and purposes. (WCJ's Findings of Fact, No. 29.) Our review of the record reveals that these findings are supported by Claimant's testimony as well as the testimony of Dr. Fried.

Employer does not attack these findings as unsupported by substantial evidence. Rather, Employer argues that a determination of specific loss in this case is improper as a matter of law, because the record as a whole establishes that Claimant can rely on his hands to perform various daily activities.

However, it is well-settled that where, as here, the WCJ's findings are supported by substantial evidence, they are binding on appeal, and this court may not substitute its own judgment with regard to the credibility and weight to be given evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *Lehigh County Vo-Tech School v. Workmen's Compensation Appeal Board (Wolfe)*, 539 Pa. 322, 652 A.2d 797 (1995). In addition, this court has held that "the loss of use for all practical intents and purposes" does not mean that an injured body part is of absolutely no use whatsoever. *Gindy Manufacturing* (affirming a determination of specific loss where medical testimony indicated only a 55% loss of use).[9] Here, the WCJ's

---

8. See WCJ's Findings of Fact, No. 18, summarizing Dr. Fried's testimony.

9. We also disagree with Employer's characterization of Claimant's testimony. For instance, Employer asserts that Claimant testified he is able to shave. In fact, Claimant

findings detail Claimant's inability to perform numerous routine tasks associated with the activities of daily living, and those findings support the WCJ's determination that Claimant suffered a specific loss of the use of his hands for all intents and purposes.

Accordingly, we affirm.

### ORDER

AND NOW, this 4th day of September, 2003, the order of the Workers' Compensation Appeal Board, dated February 12, 2003, is hereby affirmed.

testified that he shaves his neck, but he grew a beard because he cannot shave his face without cutting himself.