**Patricia REUTZEL, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (ALLEGHENY GENERAL HOSPITAL), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 10, 2009.

Decided Oct. 20, 2009.

Lawrence R. Chaban, Pittsburgh, for petitioner.

Karyn Dobroskey Rienzi, Philadelphia, for respondent.

BEFORE: LEADBETTER, President Judge, and KELLEY, Senior Judge, and QUIGLEY, Senior Judge.

OPINION BY President Judge LEADBETTER.

Patricia Reutzel (Claimant) petitions for review of the order of the Workers' Compensation Appeal Board (Board) that, *inter alia,* affirmed the decision of the Workers' Compensation Judge (WCJ) granting in part and denying in part her petition to reinstate partial disability benefits. In this appeal, Claimant raises the novel issue of whether her benefits for partial disability resulting from two separate work injuries ran concurrently or consecutively for the purpose of the 500-week limitation on partial disability benefits under Section 306(b)(1) of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 512(1).

The relevant facts are undisputed. While working for Allegheny General Hospital (Employer) as a registered nurse, Claimant sustained a work-related right shoulder injury on February 24, 1996. Pursuant to a notice of compensation payable, which described her injury as "rotator cuff tendonitis w/bicipital tendon," she received weekly total disability benefits of $527 based on her average weekly wage of $1354.69. Stipulation ¶ 1; Reproduced Record at 45a. She later returned to work with a restriction of working fewer hours and received partial disability benefits based on her reduced earnings. On May 30, 1997, she sustained another work injury to her low back but continued to work with the same restriction imposed for the

February 24, 1996 injury. In 2003, she underwent low back surgery to treat the May 30, 1997 injury and received weekly total disability benefits of $527. However, although her average weekly wage for the May 30, 1997 injury was $1354.69, it yielded a higher weekly compensation rate of $542 at that time. Three months after the surgery, she returned to work with the same work-hour restriction imposed before the surgery and continued to receive partial disability benefits. In a subsequent decision issued in 2004, the WCJ recognized the May 30, 1997 injury as work-related, and the Board affirmed. No further appeal was filed.

As of June 1, 2006, Claimant received 500 weeks of partial disability benefits. Employer then stopped paying her benefits, claiming that she was not entitled to further benefits under Section 306(b)(1) of the Act, which sets forth the following compensation schedule for partial disability:

> For *disability partial in character* caused by the compensable injury or disease (except the particular cases mentioned in clause (c)) [77 P.S. § 513 (compensation schedule for specific losses) ] sixty-six and two-thirds per centum of the difference between the wages of the injured employe ... and the earning power of the employe thereafter; but such compensation shall not be more than the maximum compensation payable.[1] This compensation shall be paid *during the period of such partial disability ... but not more than five hundred weeks.* Should total disability be followed by partial disability, *the period of five hundred weeks shall not be reduced by the number of weeks during which compensation was paid for total disability.* [Emphasis added.]

Section 306(a.2)(7) of the Act, added by Section 4 of the Act of June 24, 1996, P.L. 350, 77 P.S. § 511.2(7), also provides that "[i]n no event shall the total number of weeks of partial disability exceed five hundred weeks *for any injury or recurrence thereof, regardless of the changes in status in disability that may occur.*" (Emphasis added.)

On July 11, 2006, Claimant filed a reinstatement petition, alleging that she received 500 weeks of partial disability benefits only for the February 24, 1996, injury and that she was entitled to another 500 weeks of partial disability benefits for the May 30, 1997, injury. Employer responded in its answer that she received partial disability benefits for both injuries. She thereafter resigned from employment with Employer and began working for HCR Manor Care, initially three days a week and eventually five days a week earning $1000 a week.

The WCJ found no factual or legal basis for Claimant's contention that her 500–week partial disability benefits for the 1997 injury were suspended until she exhausted 500 weeks of partial disability benefits for the 1996 injury. The WCJ stated:

> The 500-week limitation imposed by the legislature on the receipt of partial disability is clearly intended to limit the

---

1. The terms "the maximum weekly compensation payable" and "the maximum compensation payable per week" mean "sixty-six and two-thirds per centum of 'the Statewide average weekly wage.'" Section 105.2 of the Act, added by Section 4 of the Act of March 29, 1972, P.L. 159, 77 P.S. § 25.2. The term "the Statewide average weekly wage" is, in turn, defined as "that amount which shall be determined annually by the department for each calendar year on the basis of employment covered by the Pennsylvania Unemployment Compensation Law for the twelve month period ending June 30 preceding the calendar year." Section 105.1 of the Act, added by Section 3 of the Act of March 29, 1972, P.L. 159, 77 P.S. § 25.1.

period *after an injury* during which an individual[,] who can work *despite some continuing impairment* from that injury, will be economically supported as to earnings.... The parties agree that the claimant was partially disabled due to both injuries from the date of the second injury, and it is from her first partial disability payment thereafter that the 500 weeks begins to run.

WCJ's Decision at 2 (emphasis in original) The WCJ determined that Claimant's entitlement to partial disability benefits expired when she received 500 weeks of partial disability benefits after the 1997 work injury, not including total disability benefits received after the 2003 low back surgery. The WCJ further determined that Employer paid disability benefits at an incorrect compensation rate after the 1997 injury. The WCJ accordingly granted in part and denied in part the reinstatement petition and assessed a penalty against Employer in the amount of 50% of the difference between the correct amount of benefits and the actual amount paid to Claimant. The WCJ also concluded that Employer's contest was reasonable. Both parties appealed the WCJ's decision.

The Board affirmed the WCJ's decision on the reinstatement petition. The Board stated: "The Act clearly indicates that the 500 week period starts with the commencement of partial disability. Therefore, Claimant has two periods of partial disability, and the result is not cumulative, but concurrent." Board's Opinion at 2-3. The Board also agreed that Employer's contest was reasonable. The Board reversed the WCJ's imposition of a penalty, finding that the WCJ failed to provide notice and a hearing on the issue. Claimant's appeal to this Court followed.

■ On appeal, Claimant only challenges the Board's order affirming the WCJ's grant of the reinstatement petition

in part. She reiterates that the periods of partial disability benefits for the 1996 and 1997 injuries should not run concurrently. She maintains that the period of her benefits for the 1997 injury was "suspended" and did not begin to run until she exhausted her benefits for the 1996 injury.

■ The term "disability," either total or partial, referred to in the Act is synonymous with a loss of earning power. *Landmark Constructors, Inc. v. Workers' Comp. Appeal Bd. (Costello)*, 560 Pa. 618, 747 A.2d 850 (2000). To be entitled to disability benefits, therefore, the claimant must prove that the work-related injury impaired his or her ability to earn a wage. *Banic v. Workmen's Comp. Appeal Bd. (Trans–Bridge Lines, Inc.)*, 550 Pa. 276, 705 A.2d 432 (1997); *Republic Steel Corp. v. Workmen's Comp. Appeal Bd. (Petrisek)*, 537 Pa. 32, 640 A.2d 1266 (1994).

■ Section 413(a) of the Act, 77 P.S. § 772, provides in relevant part that "where compensation has been *suspended* because the employe's earnings are equal to or in excess of his wages prior to the injury that payments under the agreement or award may be resumed at any time *during the period for which compensation for partial disability is payable ....*" (Emphasis added.) In addition, a petition to reinstate partial disability benefits must be filed within the 500-week partial disability benefit period, which "begins to run on the date *total* disability benefits are initially suspended." *Cytemp Specialty Steel v. Workers' Comp. Appeal Bd. (Servey)*, 811 A.2d 114, 116 (Pa.Cmwlth.2002) (emphasis in original). *Accord Romanowski v. Workers' Comp. Appeal Bd. (Precision Coil Processing)*, 944 A.2d 127 (Pa. Cmwlth.2008). Thus, the Act clearly limits the partial disability period to 500 weeks, regardless of any change in disability sta-

tus. Sections 306(a.2)(7) and 306(b)(1) of the Act.

By contrast, total disability benefits are not subject to any specified time limitation; rather, they are "payable for the duration of total disability" up to the maximum compensation payable. Section 306(a)(1) of the Act, 77 P.S. § 511(1). As the Supreme Court explained:

> Significantly, an employee with a fixed and stable, but partially-disabling, condition may receive the protection of a substantial period of subsidy (approximately nine and one-half years), within which to adjust to his disability and maximize his earning capacity consistent with his physical limitations. At a minimum, assuming no worsening of the employee's condition, the employee retains his physical capacity to generate the amount of earnings.... The same cannot be said, however, where an employee's condition deteriorates to the point of total disability, or work within the claimant's restrictions ceases to be available, such that the employee no longer retains the ability to support himself and his dependents in any fashion. Since these circumstances diverge substantially in terms of the impact of cessation of benefits upon the injured employee, it is not surprising that the legislative scheme of compensation allows for differential treatment.

*Stewart v. Workers' Comp. Appeal Bd. (Pa. Glass Sand/US Silica)*, 562 Pa. 401, 409, 756 A.2d 655, 659 (2000).

In this case, Claimant returned to work immediately after the 1997 injury with the same restriction imposed for the 1996 injury. She maintained the same ability to earn wages and suffered no additional loss of earning capacity due to the 1997 injury. Claimant has offered no statutory basis for suspending her partial disability benefits for the 1997 injury while she was receiving partial disability benefits for the 1996 injury.

Further, *Westmoreland Regional Hospital v. Workers' Compensation Appeal Board (Stopa)*, 789 A.2d 413 (Pa.Cmwlth. 2001), cited by Claimant, does not support her argument that she should receive consecutive partial disability benefits for the two injuries beyond the 500-week partial disability benefit limitation. In *Westmoreland Regional Hospital*, the claimant received total disability benefits for a work-related right-shoulder injury. She later returned to modified work at a reduced wage and received partial disability benefits. She subsequently sustained a work-related knee injury. She then filed petitions to reinstate her total disability benefits for the first injury and to receive total disability benefits for the second injury. The Court rejected the WCJ's decision to allow her to receive simultaneous benefits for overlapping total disability up to the maximum compensation rate. The Court reasoned that a claimant could not collect two total disability awards because "short of death, a claimant can never be more than totally disabled." *Id.* at 417.

In so holding, the Court clarified its previous decisions in *Reliable Foods, Inc. v. Workmen's Compensation Appeal Board (Horrocks)*, 660 A.2d 162 (Pa. Cmwlth.1995) (the claimant was entitled to receive simultaneous benefits for both partial and total disability from separate work injuries up to the maximum compensation rate because, had it not been for the first injury, the claimant would have been receiving a higher wage when the claimant was subsequently totally disabled), and *Trenton China Pottery v. Workers' Compensation Appeal Board (Mensch)*, 773 A.2d 1265 (Pa.Cmwlth.2001) (the claimant was allowed to receive simultaneous total disability benefits for two separate work injuries; the court apportioned the liability

for benefits between the two insurers). *See also Tomlinson v. Workmen's Comp. Appeal Bd. (J. Baker, Inc.)*, 167 Pa. Cmwlth.329, 648 A.2d 96 (1994) (there is no proscription on the receipt of simultaneous compensation, if the total compensation does not exceed the statutory maximum). The Court held in *Westmoreland Regional Hospital* that those prior cases merely stood for the proposition that the Act does not proscribe simultaneous compensation "so long as the total compensation, *based on the claimant's pre-injury average weekly wage,* does not exceed the statutory maximum allowable benefit." *Westmoreland Reg'l Hosp.*, 789 A.2d at 418 (emphasis in original).

Subsequently in *L.E. Smith Glass Company v. Workers' Compensation Appeal Board (Clawson)*, 571 Pa. 594, 813 A.2d 634 (2002), the claimant received total disability benefits for the 1989 work injury, later returned to work without restrictions and signed a final receipt. In 1991, he sustained another work injury and began receiving total disability benefits. In 1993, he sought to reinstate total disability benefits for a recurrence of the 1989 injury. The WCJ allowed her to receive benefits for overlapping total disability up to the maximum benefit rate. Agreeing with this Court's reasoning in *Westmoreland Regional Hospital,* the Supreme Court held that the claimant was not entitled to total disability benefits for the recurrence of the 1989 injury because he was already receiving total disability benefits for the 1991 injury and suffered no additional wage loss due to the recurrence of the previous injury. The Court, however, recognized the possibility that the 1991 injury could resolve in the future. To ensure proper compensation for both totally disabling injuries, the Court determined that total disability benefits for the 1989 injury should

be suspended until his entitlement to benefits for the 1991 injury changed.

Unlike *L.E. Smith Glass* and other cases cited by Claimant, this case does not involve the issues of the simultaneous payments of *total* disability benefits for separate injuries and the proper apportionment of liabilities between insurers. Claimant was already partially disabled when she sustained the 1997 injury. She thereafter maintained the same ability to earn wages and suffered no additional wage loss due to the 1997 injury. Claimant's argument that her partial disability benefits for the 1997 injury should be suspended until she exhausted her benefits for the 1996 injury entirely ignores the different treatment of partial and total disability by the Act and directly contravenes the unambiguous language of Section 306(a.2)(7) and 306(b)(1) of the Act specifically limiting the period of partial disability benefits to 500 weeks for any injury or its recurrence, regardless of any change in disability status.

We conclude that neither the Act nor case law supports Claimant's argument that she is entitled to two consecutive 500-week partial disability benefits for the two work injuries. Accordingly, the order of the Board is affirmed.

### ORDER

AND NOW, this 20th day of October, 2009, the order of the Workers' Compensation Appeal Board in the above-captioned matter is hereby AFFIRMED.