**Geoffrey PUGH, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (TRANSPERSONNEL, INC.), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 23, 2004.

Decided Aug. 11, 2004.

Reargument Denied Oct. 14, 2004.

Gerard K. Schrom and Neil E. Botel, Media, for petitioner.

John J. Daly, Philadelphia, for respondent.

BEFORE: McGINLEY, Judge, LEAVITT, Judge, MIRARCHI, Jr., Senior Judge.

OPINION BY Judge LEAVITT.

Geoffrey Pugh (Claimant) petitions for review of an adjudication of the Workers' Compensation Appeal Board (Board) that denied him benefits. In doing so, the Board affirmed the decision of the Workers' Compensation Judge (WCJ) that Claimant, who was injured in Minnesota, had failed to prove that his employment was principally located in Pennsylvania at the time of his injury. This demonstration was a necessary prerequisite to an award of Pennsylvania workers' compensation benefits for an out-of-state injury.

Claimant, a Pennsylvania resident, was employed as an over-the-road truck driver, who delivered loads all over this country and Canada.[1] On January 25, 1996, he was injured while unloading a shipment; these injuries consisted of frostbite on both feet and ankles, for which he collected workers' compensation benefits in accordance with the Minnesota workers' compensation statute. On May 1, 2001, after he exhausted disability benefits allowable under the Minnesota statute,[2] Claimant filed a petition under the Pennsylvania Workers' Compensation Act (Act)[3] for his frostbite injuries. Claimant's employer, Transpersonnel, Inc. (Employer), filed an answer denying the material allegations of the claim petition.

At the hearing before the WCJ, Claimant testified about his employment history and duties while working for Employer. In 1992, he responded to Employer's advertisement in the local newspaper for truck drivers. After he took a driving test in Bensalem, Pennsylvania, he then attended a week-long safety training class in New Jersey. During that week of training, he was given an employment application and agreement, which he filled out and signed. At the end of the week, James Conboy, manager of Employer's Haslet, New Jersey office, directed him to "call dispatch" for his first assignment. Reproduced Record 92a (R.R. ——).

Employer is a driver recruiting and screening company that leases its employee truck drivers to customers that need such drivers. It assigned Claimant to Employer's customer, Trimac, a Canadian company with branches in Pennsylvania and Kentucky. On the trip in question, Claimant left from Trimac's facility located in Croydon, Pennsylvania and drove to Cranston, Minnesota, where the temperature was –32 Fahrenheit. While he was unloading the trailer, his clothing became wet and because he was working outside in extremely low temperatures, Claimant developed frostbite. He drove back to Pennsylvania and visited a medical facility as directed by Employer. R.R. 76a. He was then sent to a hospital in Langhorne. Fol-

---

1. This was Claimant's description and was given at the hearing before the WCJ.

2. Medical treatment for his frostbite injuries was not terminated under the Minnesota workers' compensation system.

3. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041.4, 2501–2626.

lowing several unsuccessful treatments, Claimant underwent surgery. He has had several toes amputated, and he expects to have further surgery. Claimant last worked as a truck driver in March of 2000, and he testified that he is not able to perform the duties of an over-the-road driver because of his ongoing symptoms.

In response, Employer introduced Claimant's employment application, dated April 4, 1992, showing Employer's address as Matawan, New Jersey. The application also indicated that Trimac was the customer to which Claimant was assigned. Employer also presented a copy of the decision of Jane Gordon Ertl, a Compensation Judge for the state of Minnesota, discontinuing Claimant's temporary total disability benefits as of May 17, 2000, after receiving 104 weeks of temporary total disability.[4] The parties stipulated that during these 104 weeks, Claimant received disability benefits in the amount of $492.83 per week as well as a "3% permanency rating" from the State of Minnesota.

On September 6, 2002, the WCJ issued a decision in which he found Claimant's testimony credible with regard to the occurrence of his injury, his symptoms and his resulting disability. The WCJ also made the following relevant finding:

> This Court has determined that the evidence reveals that Claimant's injury on January 25, 1996 took place in the State of Minnesota. The Claimant was employed as an over-the-road truck driver and that he completed his original appli-

cation for employment in the State of New Jersey, the headquarters of Defendant, Transpersonnel. Accordingly, this Court has determined the evidence, when considered as a whole, [sic] that *Claimant's employment was not principally located in the Commonwealth of Pennsylvania at the time of his injury.*

Finding of Fact No. 9, WCJ's Decision of September 6, 2002 (emphasis added). Because Claimant failed to prove that his employment was principally located in Pennsylvania, the WCJ dismissed his claim petition. Claimant appealed to the Board, and it affirmed the decision of the WCJ. Claimant now petitions for this Court's review.

On appeal,[5] Claimant presents three questions for our consideration. First, Claimant contends that the findings of the WCJ are subject to the "capricious disregard of evidence standard of review." Second, he claims that the Board erred or capriciously disregarded evidence that Employer maintained a place of business in Pennsylvania. Third, the Board erred or capriciously disregarded evidence that Claimant spent a substantial part of his time working in the service of Employer in Pennsylvania. But for these errors, Claimant would have been found eligible for benefits.

Claimant's first contention is that the standard of review to be applied here is the capricious disregard standard. He contends that he was the only party to present evidence on the place of his employment, which showed, he asserts, that

---

4. Judge Ertl's decision explained that 104 weeks is the maximum number of weeks to be awarded under the Minnesota Workers' Compensation Act.

5. Our scope of review is limited to determining whether constitutional rights were violated, whether the adjudication is in accordance with the law and whether the necessary find-

ings of fact are supported by substantial evidence. *Macomber v. Workers' Compensation Appeal Board (Penske Transportation Services and Gallagher Bassett Services and Old Republic Insurance Co.),* 837 A.2d 1283 (Pa.Cmwlth. 2003), *appeal denied,* 577 Pa. 738, 848 A.2d 931 (2004).

he worked principally in Pennsylvania. Because this evidence was capriciously disregarded by the WCJ, however, a different conclusion was reached.

■ Claimant misapprehends the law on capricious disregard of evidence. Claimant relies on *Russell v. Workmen's Compensation Appeal Board (Volkswagen of America)*, 121 Pa.Cmwlth. 436, 550 A.2d 1364 (1988) to support his argument. *Russell* holds that capricious disregard of evidence is the standard to apply in a case where the burdened party is the only party to present evidence. However, *Russell* has been supplanted. As explained by our Supreme Court in *Leon E. Wintermyer, Inc. v. Workers' Compensation Appeal Board (Marlowe)*, 571 Pa. 189, 203, 812 A.2d 478, 487 (2002), review for capricious disregard of material, competent evidence can be an appropriate component of appellate consideration in any case where

properly raised.[6] It is not limited to the situation where only one party presents evidence.

■ In any case, Claimant's evidence was not disregarded. At the hearing before the WCJ, Claimant described himself as an over-the-road truck driver who took loads all over the country and Canada. Claimant argues in his brief that he was always dispatched from Pennsylvania and that he spent one-third of his time in Pennsylvania as a driver-trainer at Trimac's facility in Bensalem. However, these facts are not supported by the record.[7] The only arguable support for these facts are Claimant's statements made in a deposition that was never entered into evidence.[8] We cannot decide this case using evidence *dehors* the record.

■ Further, on the question of where Claimant was hired,[9] both parties present-

6. However, capricious disregard is not to be applied in such a manner as would intrude upon an agency's fact-finding role and discretionary decision-making. As noted by the Supreme Court, "where there is substantial evidence to support an agency's factual findings, and those findings in turn support the conclusions, it should remain a rare instance in which an appellate court would disturb an adjudication based upon capricious disregard." *Wintermyer*, 571 Pa. at 204, 812 A.2d at 487 n. 14.

7. Claimant's Brief cites portions of a deposition that are included in Claimant's reproduced record; however, this deposition is not part of the certified record. Employer requests that Claimant's brief be stricken for failure to comply with Pa. R.A.P. 2152. Claimant contends that the deposition should be considered part of the record because portions of the deposition were attached as exhibits to his memorandum before the WCJ and Employer did not object to their inclusion. It is beyond cavil that an appellate court is limited to considering only those facts which have been duly certified in the record on appeal. *Berninger v. Workers' Compensation Appeal Board (East Hempfield Township)*, 761 A.2d 218 (Pa.Cmwlth.2000). The deposi-

tion cannot be considered because it is not part of the certified record. *Steglik v. Workers' Compensation Appeal Board (Delta Gulf Corp.)*, 755 A.2d 69 (Pa.Cmwlth.2000). We will only consider Claimant's testimony before the WCJ but will decline to strike his brief.

8. It is not clear whether the WCJ considered this deposition, but we cannot say that this deposition is sufficient, without more, to prove that Claimant worked principally in Pennsylvania. "One third" of his time does not necessarily equate with substantial service in Pennsylvania. Further, Claimant's statements in the deposition were contradicted by his testimony before the WCJ.

9. As an alternative, Claimant argues that he was hired in Pennsylvania, noting that the WCJ erred by "ignor[ing] the gravamen of claimant's jurisdictional claim and, armed solely with findings of fact concerning the 'place of hire,' addressed claimant's eligibility under Section 305.2(a)(2) through (4)" of the Act (relating to working under a contract made in this State). Claimant's Brief at 16. As explained, the WCJ specifically found the application for employment was made in New

ed evidence. Claimant testified at the hearing that he was "orally" hired after he took the driving test in Bensalem. Employer presented evidence that his employment application and contract were completed and executed by Claimant in the State of New Jersey. The WCJ found that Claimant was hired in New Jersey, and this finding is supported by substantial evidence. The WCJ did not disregard Claimant's statement at the hearing; it simply was not credited to the extent it was contradicted by the written employment application, which was dated *after* Claimant's supposed oral hiring at the driving test in Bensalem.

This case is governed by Section 305.2 of the Act, which addresses injuries that occur outside Pennsylvania. If an employee would have been entitled to benefits had the injury occurred in Pennsylvania, then the employee may be entitled to benefits under the Act. It is the employee's burden to establish at the time of this out-of-state injury that:

(1) His employment is principally localized in this State, or

(2) He is working under a contract of hire made in this State in employment not principally localized in any state, or

(3) He is working under a contract of hire made in this State in employment principally localized in another state whose workmen's compensation law is not applicable to his employer, or

(4) He is working under a contract of hire made in this State for employment outside the United States and Canada.

Section 305.2(a) of the Act, added by Section 9 of the Act of December 5, 1974, P.L. 782, 77 P.S. § 411.2(a). The Board found Jersey. *See* Finding of Fact No. 9 at page

that because Claimant was working under a contract for hire entered into in the State of New Jersey, he had to show that his employment was principally localized in Pennsylvania in order to be eligible for benefits under the Act.

■ In his second contention, Claimant argues that the WCJ capriciously disregarded evidence that showed that his employment was "principally localized" in Pennsylvania as provided in Section 305.2(d)(4)(i) and (ii) of the Act. The jurisdiction where a claimant's employment is "principally localized" is determined as follows:

(i) *his employer has a place of business in this or such other state and he regularly works at or from such place of business,* or (ii) having worked at or from such place of business, his duties have required him to go outside of the State not over one year, or (iii) if clauses (1) and (2) foregoing are not applicable, he is domiciled and spends a substantial part of his working time in the service of his employer in this or such other state.

Section 305.2(d)(4) of the Act, 77 P.S. § 411.2(d)(4) (emphasis added). Claimant argues that Employer maintains a place of business in this Commonwealth from which he regularly worked.

In support, Claimant directs our attention to *Robbins v. Workmen's Compensation Appeal Board (Mason–Dixon Line, Inc.)*, 91 Pa.Cmwlth. 269, 496 A.2d 1349 (1985). In that case, the claimant was hired by a Tennessee corporation, and he suffered a work-related injury in South Carolina. However, the claimant resided in Pennsylvania, and he received his work assignments from a terminal in Morrisville, Pennsylvania. The employer's agent had an office at the Morrisville terminal, where drivers picked up their trucks and

*644, supra.*

received the dispatch directions from the employer's agent. In addition, the employer maintained agents at five other terminals in Pennsylvania. We concluded that employing agents at various Pennsylvania truck terminals constituted places of business of the employer under Section 305.2(d)(4)(i) and (iii) of the Act, 77 P.S. § 411.2(d)(4)(i) and (iii).

More recently, this Court addressed the question of whether a "place of business," as used in Section 305.2(d)(4) of the Act, means that this "place" must be owned or leased by the employer. In *Macomber v. Workers' Compensation Appeal Board (Penske Transportation Services and Gallagher Bassett Services and Old Republic Insurance Co.)*, 837 A.2d 1283 (Pa. Cmwlth.2003), the question was whether the employer had a "place of business" in New Jersey. The employer in *Macomber* was a trucking company that provided hauling for Super Fresh Supermarkets from a warehouse located in Florence, New Jersey. The warehouse was located in an area within the Super Fresh complex, entered through the main gate. The employer did not own or lease the warehouse, but it had fifty employees assigned to work there: four administrative personnel, five mechanics, approximately forty truck drivers and a terminal manager. The employer maintained files, office equipment, a sign, bulletin boards and furniture inside the warehouse.

To decide the question of whether the employer had to own or lease the New Jersey warehouse in order to be located in New Jersey, we turned to the dictionary definition of the word "has." This intransitive verb includes being in "a position to exercise (as a right or privilege)." *Id.*, 837 A.2d at 1287. Thus, this Court concluded that the employer's right of control over a New Jersey warehouse was sufficient, and the employer was found to have a "place of business" in New Jersey.

In the case before us, it is undisputed that Claimant has been employed by Employer since 1992; that Employer assigned Claimant to work for Trimac in 1992; and that Trimac has maintained a place of business in Pennsylvania.[10] Trimac is Employer's customer, and it does not have corporate affiliation with Employer. Unlike the facts in *Robbins* or *Macomber*, there is no evidence that Employer exercised any right or control over the Trimac facility, used Trimac's office space or terminal space or maintained personal property there, such as office furniture or records. Employer did not assign an agent to work from the Trimac facility or any other facility in Pennsylvania. In sum, the WCJ and Board did not err in finding that Employer did not maintain a place of business in Pennsylvania. As such, Claimant failed to establish that Employer had a "place of business" in Pennsylvania within the meaning of Section 305.2(d)(4) of the Act.[11]

█ Claimant's final argument is that he established that he is qualified for benefits under Section 305.2(d)(4)(iii) of the Act

---

**10.** There is no testimony that Claimant worked for any other Employer since 1992, or was assigned to any carrier other than Trimac since 1992, or that Claimant was assigned to a Trimac facility other than the one located first in Bensalem, Pennsylvania, which subsequently relocated to Croydon, Pennsylvania.

Claimant does not assert that Trimac was his actual employer and, as such, obligated to provide him benefits. Claimant's employ-

ment agreement contained a recital that Transpersonnel, Inc. was his sole employer. Claimant does not raise a "borrowing employer" claim. *See, e.g., Mature v. Angelo*, 373 Pa. 593, 97 A.2d 59 (1953).

**11.** The WCJ did not capriciously disregard evidence; Claimant did not present evidence to support a finding that Employer had a place of business in Pennsylvania.

because he is a resident and he spent a substantial part of his working time in this state in the service of Employer. Again, the record is devoid of any evidence that Claimant worked at or from a location in Pennsylvania. Accordingly, the WCJ did not err by concluding that Claimant did not meet his burden of proof necessary to establish entitlement to benefits under the Act.

For these reasons, the decision of the Board is affirmed.

## ORDER

AND NOW, this 11th day of August, 2004, the August 26, 2003 order of the Workers' Compensation Appeal Board in the above-captioned matter is hereby affirmed.

Senior Judge MIRARCHI, Jr., dissents.