William KANE, Petitioner

v.

**WORKERS' COMPENSATION APPEAL BOARD (Glenshaw GLASS), Respondent.**

Commonwealth Court of Pennsylvania.

Argued Nov. 12, 2014.

Decided June 25, 2015.

Lawrence R. Chaban, Pittsburgh, for petitioner.

Lawrence J. Baldasare, Pittsburgh, for respondent.

BEFORE: DAN PELLEGRINI, President Judge, BERNARD L. McGINLEY, Judge, RENÉE COHN JUBELIRER, Judge, ROBERT SIMPSON, Judge, MARY HANNAH LEAVITT, Judge, P. KEVIN BROBSON, Judge and PATRICIA A. McCULLOUGH, Judge.

OPINION BY Judge P. KEVIN BROBSON.

Petitioner William Kane (Claimant) petitions for review of an order of the Work-ers' Compensation Appeal Board (Board), dated June 18, 2013, which reversed an order of a Workers' Compensation Judge (WCJ), thereby denying Claimant workers' compensation benefits. The WCJ had granted Claimant's reinstatement petition filed in September 2010 against Respondent Glenshaw Glass Company[1] (Employer) relating to a June 2, 1999 work-related injury. We now reverse and remand.

Claimant initially suffered a work-related injury to his right shoulder on March 21, 1991, while employed by Employer. Employer, through its then-insurer Argonaut Insurance (Argonaut), issued a notice of compensation payable, describing the injury as an "A/C separation," and paid Claimant total disability benefits at a maximum rate of $436.00 per week. (Reproduced Record (R.R.) at 17a.) Claimant later returned to his regular job, and Employer suspended Claimant's benefits.

On December 25, 1995, also while employed by Employer, Claimant suffered a work-related injury to his *other* shoulder, which was described as a "left shoulder strain/sprain." (*Id.*) Employer, which was self-insured at the time of the incident, issued a notice of compensation payable and paid Claimant total disability benefits at a maximum rate of $509.00 per week. Following two surgeries, Claimant returned to modified duty work with Employer.

Thereafter, in November 2000, Claimant filed a claim petition, alleging he suffered a new work-related injury to his right shoulder on June 2, 1999, and a reinstatement petition, alleging in the alternative that he suffered a recurrence of his 1991 injury on June 2, 1999. By decision and order dated March 23, 2001, WCJ Tobin determined that Claimant suffered a *new* injury to his

---

1. Respondent is referred to as Glenshaw Glass in the caption, but it appears that Re-spondent's full name is Glenshaw Glass Company.

right shoulder and not a recurrence of the 1991 injury. It appears that Chubb Insurance (Chubb) was Employer's insurance carrier for any incidents that occurred on June 2, 1999. WCJ Tobin also found that Claimant was totally disabled from June 3, 1999 through June 10, 1999, and partially disabled from June 11, 1999 through August 1, 1999. WCJ Tobin suspended Claimant's benefits as of August 2, 1999, because, following two surgeries on his right shoulder, Claimant returned to the same modified duty work for Employer. Total disability benefits were paid at the rate of $470.97 per week.

Petitioner worked with no loss of earnings between August 2, 1999, until November 2004, when Employer ceased operations and eliminated Claimant's job. Employer reinstated Claimant's total disability benefits for the *1995 left shoulder injury* by supplemental agreement, effective November 25, 2004.[2]

On January 6, 2006, while still receiving total disability benefits for his 1995 left shoulder injury, Claimant filed a reinstatement petition for the *1999 right shoulder injury,* alleging that his 1999 right shoulder injury again caused a decrease in earning power as of November 25, 2004. Claimant argued that because he had been performing modified duty work as a result of his 1999 right shoulder injury and his modified work ended, he was entitled to reinstatement of benefits for the 1999 injury. Claimant also took the position that such reinstatement should be suspended while he continued to receive benefits for the 1995 left shoulder injury.

By decision and order dated July 31, 2006, WCJ Parker denied Claimant's rein-

statement petition on the basis that he was still receiving total disability benefits for his 1995 injury under the parties' supplemental agreement. (*Id.* at 19a.) WCJ Parker also concluded that Claimant's benefits for the 1999 right shoulder injury "remain properly suspended," because Claimant continues to receive total disability benefits for the 1995 left shoulder injury. (*Id.*) Claimant appealed to the Board, which affirmed the WCJ's order. On appeal to this Court, we affirmed the decision of Board, but we did not foreclose the possibility of reinstatement of his 1999 right shoulder injury claim at some point in the future. *See Kane v. Workers' Comp. Appeal Bd. (Glenshaw Glass Co.),* 940 A.2d 572 (Pa.Cmwlth.2007) (*Kane I* ), *appeal denied,* 598 Pa. 770, 956 A.2d 437 (2008).

Thereafter, the parties entered into a Compromise and Release of the 1995 left shoulder injury, and on September 29, 2010, Claimant filed the subject reinstatement petition against Employer and its relevant insurer—Chubb. Through the reinstatement petition, Claimant seeks total disability benefits for the June 2, 1999 right shoulder injury, effective September 23, 2010—the date of the approval of the Compromise and Release. Claimant took the position that 1995 injury for which he was receiving total disability benefits (from Employer) has been resolved through the Compromise and Release, such that he is now entitled to total disability benefits for the 1999 injury. Employer responded that Claimant's reinstatement petition was barred by the 500–week limitations period contained in the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4; 2501–2708.[3]

---

**2.** According to Claimant, the parties agreed to reinstate compensation for the 1995 injury as opposed to the 1999 injury, because compen-

sation was greater for the 1995 injury than the 1999 injury. (Petitioner's Br. at 6.)

**3.** Employer inaccurately referred to a 500–week statute of limitations contained in Sec-

The matter was assigned to WCJ Cohen for consideration. As part of the proceedings before WCJ Cohen, the parties stipulated that no benefits had been paid on the 1999 work injury since August 1, 1999. WCJ Cohen considered only whether the payment for an unrelated work injury precludes the running of the 500–week statute of repose under Sections 413(a)[4] and 306(b) of the Act.[5] By decision and order dated May 11, 2011, WCJ Cohen granted Claimant's reinstatement petition and awarded a reinstatement of total disability benefits effective September 23, 2010. In so doing, WCJ Cohen concluded that Claimant's disability arising out of the 1999 right shoulder injury recurred on November 25, 2004, at the time Employer's plant closed. He further concluded that, as a matter of law, because benefits were suspended as a result of Claimant's receipt of total disability benefits for his 1995 left shoulder injury, the 500–week statute of repose under Section 413(a) of the Act was inapplicable.

Employer (and Chubb) then appealed to the Board, contending, in part, that the applicable 500–week period set forth in the Act and the doctrines of *res judicata* and collateral estoppel barred Claimant's reinstatement petition. By decision and order dated June 18, 2013, the Board reversed WCJ Cohen's order, concluding that the reinstatement petition was barred by the 500–week period set forth in Section 413(a) of the Act and that the doctrine of collateral estoppel prevented the re-litigation of issues already decided in Claimant's first reinstatement petition. It also held that the reinstatement petition was outside the three-year limitation period, because Claimant had not received indemnity benefits for his 1999 right shoulder injury since August 1, 1999.[6] Claimant then petitioned this Court for review.

■ On appeal,[7] Claimant argues that the Board erred in concluding that Claimant was collaterally estopped from seeking reinstatement for his 1999 right shoulder injury as a result of our decision in *Kane I.* Claimant also argues that the Board erred when it determined that Claimant's reinstatement petition based on his 1999 right shoulder injury was time-barred pursuant to Section 413(a) of the Act, when those benefits were suspended due to his receipt of benefits for the 1995 left shoulder injury.

■ First, we will address Claimant's argument that the Board erred in concluding that he was collaterally estopped from seeking reinstatement of benefits for his 1999 right shoulder injury as a result of this Court's decision in *Kane I.* As we explained in *Weney v. Workers' Compensation Appeal Board (Mac Sprinkler Systems, Inc.),* 960 A.2d 949 (Pa.Cmwlth.

tion 413(a) of the Act, *as renumbered and amended,* 77 P.S. § 772. Technically, the 500–week period is referred to as a "statute of repose," not a "statute of limitations." *Cozzone v. Workers' Comp. Appeal Bd. (Pa. Mun./ East Goshen Twp.),* 621 Pa. 23, 73 A.3d 526, 541 (2013).

**4.** Section 413(a) of the Act, *as renumbered and amended,* 77 P.S. § 772.

**5.** Section 306(b) of the Act was added by the Act of June 24, 1996, P.L. 350, *as amended,* 77 P.S. § 512.

**6.** The Pennsylvania Association for Justice filed an amicus brief, advancing arguments in support of Claimant's position.

**7.** Our review is limited to determining whether an error of law was committed, whether necessary findings of fact are supported by substantial evidence and whether constitutional rights were violated. *Degraw v. Workers' Comp. Appeal Bd. (Redner's Warehouse Mkts., Inc.),* 926 A.2d 997, 999 n. 2 (Pa.Cmwlth. 2007).

2008), *appeal denied,* 601 Pa. 691, 971 A.2d 494 (2009):

> The doctrine of collateral estoppel, often referred to as issue preclusion, "is designed to prevent relitigation of an issue in a later action, despite the fact that the later action is based on a cause of action different from one previously litigated." Collateral estoppel applies where:
>
> > (1) the issue decided in the prior case is identical to the one presented in the later case; (2) there was a final judgment on the merits; (3) the party against whom the doctrine is asserted was a party or in privity with a party in the prior case and had a full and fair opportunity to litigate the issue; and (4) the determination in the prior proceeding was essential to the judgment.

*Weney,* 960 A.2d at 954 (citations omitted).

Claimant contends that collateral estoppel is inapplicable to the present reinstatement petition because the issues of the present reinstatement petition differ from those of the previous reinstatement petition. In *Kane I,* relating to the previous reinstatement petition, Claimant sought reinstatement of benefits relating to his 1999 injury while simultaneously receiving total disability benefits for his 1995 injury under a supplemental agreement executed by the parties. Claimant's reinstatement petition was denied because benefits for the 1999 injury remained suspended as a result of Claimant's simultaneous receipt of benefits for his 1995 injury. Here, Claimant seeks reinstatement of benefits relating to his 1999 injury subsequent to the parties' execution of a Compromise and Release that resulted in the cessation of the total disability benefits relating to his 1995 injury. Moreover, Claimant contends that *Kane I* cannot be applied to collaterally estop the present reinstatement petition because this Court in *Kane I* expressly reserved the questions presented in this matter.

We agree with Claimant. Here, the criteria for collateral estoppel were not satisfied. The issues in *Kane I* were not identical to the issues presented in the subject reinstatement petition, because the circumstances for considering whether total disability benefits should be reinstated differed significantly from the circumstances presented to the Court in *Kane I,* given that Claimant is no longer receiving total disability benefits for the 1995 injury under the parties' supplemental agreement. Moreover, the Court in *Kane I* expressly reserved for consideration at a future date the issue now before the Court, when we explained:

> Section 306(b)(1) of the Act, 77 P.S. § 512, indicates that partial disability is payable for a period not to exceed five-hundred weeks. In calculating this five-hundred week period for the purpose of gauging the timeliness of a reinstatement petition, periods of suspension are included with periods where partial disability benefits are paid. *Cytemp Specialty Steel v. Workers' Compensation Appeal Board (Servey),* 811 A.2d 114 (Pa.Cmwlth.2002). A claimant may not petition for a reinstatement of benefits after the five-hundred week period expires if his benefits were in suspension status. *Stehr v. Workers' Compensation Appeal Board (Alcoa),* 936 A.2d 570 (Pa. Cmwlth.2007); *Prosick v. Workers' Compensation Appeal Board (Hershey Chocolate USA),* 936 A.2d 177 (Pa. Cmwlth.2007).[8] We acknowledge

---

**8.** Our Supreme Court disapproved of both *Stehr* and *Prosick* in *Cozzone. See Cozzone,* 73

A.3d at 534–40. We note that our decision in *Kane I* and the Board's decision now on ap-

Claimant's brief indicates that he believes that if his reinstatement petition were granted and his benefits were again immediately suspended, this new suspension would have different legal significance than the one imposed by WCJ Tobin in the 1999 Decision. In effect, he wishes the new suspension to essentially be considered a stay, or otherwise toll the running of the five-hundred weeks to file a reinstatement petition for his right shoulder injury. It is imperative that this new suspension be of a different legal significance because, as explained in *Cytemp*, periods of suspension count towards the five-hundred week allotment. The issue of whether the running of the five-hundred weeks of disability should be tolled when his benefits are suspended due to the fact that he is already receiving total disability benefits for a left shoulder injury is one that should be argued before a WCJ in the event Claimant files a reinstatement petition for the purposes of receiving indemnity benefits for his 1999 right shoulder injury at some future time. We note that Claimant's need to file a reinstatement petition for this purpose may not ever arise. Consequently, it is apparent that Claimant is seeking an advisory opinion concerning his ability to pursue a reinstatement at some point in time after his 9.5 years of partial disability would typically be considered to have expired. We do not address this argument as this Court does not issue advisory opinions. *Coleman v. Workers' Compensation Appeal Board (Indiana Hosp.)* [577 Pa. 38], 842 A.2d 349 ( [Pa.] 2004).

*Kane I,* 940 A.2d at 575 n. 5. Essentially, the Court in *Kane I* determined that is-

sues surrounding the effect of the suspension of Claimant's total disability benefits for his 1999 injury were not ripe for consideration, but that such issues may need to be litigated if and when Claimant's disability benefits for his 1995 shoulder injury ceased. Thus, it cannot be said that the issue now before the Court was decided in *Kane I.*

Next, we consider Claimant's argument that the Board erred when it determined that Claimant's petition for reinstatement based on his 1999 right shoulder injury was time-barred pursuant to Section 413(a) of the Act, when those benefits were suspended due to his receipt of benefits for the 1995 left shoulder injury. Section 413(a) of the Act, provides, in pertinent part:

> A workers' compensation judge ... may, at any time, modify, reinstate, suspend, or terminate a notice of compensation payable, an original or supplemental agreement or an award ..., upon petition filed by either party with the department, upon proof that the disability of an injured employe has increased, decreased, recurred, or has temporarily or finally ceased.... Such modification, reinstatement, suspension, or termination shall be made as of the date upon which it is shown that the disability of the injured employe has increased, decreased, recurred, or has temporarily or finally ceased ...: Provided, That, ... no notice of compensation payable, agreement or award shall be reviewed, or modified, or reinstated, *unless a petition is filed with the department within three years after the date of the most recent payment of compensation* made

peal to this Court pre-dated our Supreme Court's opinion in *Cozzone*. Although *Cozzone* did not address the precise issue now before this Court, it provided clarification as

to the interplay between the 500–week and three-year limitation periods contained in Section 413(a) of the Act.

prior to the filing of such petition....: And provided further, That *where compensation has been suspended because the employe's earnings are equal to or in excess of his wages prior to the injury that payments under the agreement or award may be resumed at any time during the period for which compensation for partial disability is payable,* unless it be shown that the loss in earnings does not result from the disability due to the injury.

(Emphasis added.) Section 306(b) of the Act sets forth "the period for which compensation for partial disability is payable," *see* Section 413(a) of the Act, and provides, in part, that compensation for a claimant's disability shall be paid *"for not more than five hundred weeks.* Should total disability be followed by partial disability, the period of five hundred weeks shall not be reduced by the number of weeks during which compensation was paid for total disability." (Emphasis added.)

Our Supreme Court in *Cozzone v. Workers' Compensation Appeal Board (Pennsylvania Municipal/East Goshen Township),* 621 Pa. 23, 73 A.3d 526 (2013), construed Section 413(a) of the Act to clarify the effect of the 500–week repose and three-year limitations periods on the timeliness of reinstatement petitions. The Supreme Court wrote:

> Reading the two provisions concurrently, we hold that under Section 413(a), workers' compensation claimants retain the right to petition for any modification that they hold at the time of any workers' compensation payment, for a minimum of three years from the date of that payment. And, where such payments have been suspended due to a return to work, or an attempted return, without a loss in earnings, Section 413(a) extends that right to petition to the entire 500–week period during which com-

pensation for partial disability is properly payable. In the event that payments are resumed after suspension, workers' compensation claimants continue to retain the right to petition for any modification that they hold at the time of any workers' compensation payment received subsequent to suspension, for a minimum of three years from the date of that payment. And finally, in the event that a period of suspension comes to an end upon the resumption (or commencement as the case may be) of workers' compensation payments, claimants retain the right to petition for modification as set forth in Section 413(a).

*Cozzone,* 73 A.3d at 536–37. In other words, "the limitations periods set forth in [S]ection 413(a) are to be construed and considered concurrently," and "effect must be given to both as far as possible." *Id.* at 540. "The provisions of Section 413(a) stand together, not in opposition to one another...." *Id.*

With regard to the three-year limitation period, the Supreme Court in *Cozzone* explained further:

> Concerning the date on which a claimant's right to compensation under the Act expires, in light of our holding that the limitations periods specified in Section 413(a) must be read concurrently, *we note that the three-year limitations period is tolled by payments of, or in lieu of, workers' compensation.* Section 413(a) [of the Act] (petition may be filed at any time "within three years after the date of the most recent payment"). Thus, any such payment made at any time prior to the expiration of a claimant's right to workers' compensation will extend the right to petition for reinstatement of total disability benefits. Once the claimant's rights have expired, however, ... no payment, whether by agreement or misconstruction of the Act, or

commendable compassion, can operate to resurrect an expired claim premised upon the Workers' Compensation Act. *Id.* at 542 (emphasis added).

■ Here, the Board, in concluding that Section 413(a) of the Act barred Claimant's reinstatement petition, cited our Supreme Court's decision in *L.E. Smith Glass Company v. Workers' Compensation Appeal Board (Clawson),* 571 Pa. 594, 813 A.2d 634 (2002), and our earlier decision in *Kane I* for the proposition that when a claimant has two injuries that are each, in and of themselves, totally disabling, a claimant may receive disability benefits for only one of the injuries. In *Clawson,* our Supreme Court rejected this Court's allowance of two awards of total disability, not because a person could not suffer from two separate totally disabling injuries, but because the Supreme Court disagreed that a claimant should be able to stack benefits for two injuries (up to the statutory maximum amount). The Supreme Court, examining a variety of possible circumstances, emphasized that "the inquiry is whether the amount of benefits is reflective of the claimant's loss in earning power." *Clawson,* 813 A.2d at 639. It commented favorably on our opinion in *Westmoreland Regional Hospital v. Workers' Compensation Appeal Board (Stopa),* 789 A.2d 413 (Pa.Cmwlth.2001), wherein we reversed a decision of the Board that permitted a claimant to recover two awards (one for a 1995 injury and the other for a 1996 injury suffered while working a modified duty position). We reasoned that to allow the claimant to collect two total disability awards would be equal to compensating her twice for losing the same position.[9] Our Court in *Kane I* appropriately applied Clawson to the extent that we prohibited Claimant from stacking benefits through two awards for total disability benefits.

In its analysis, however, the Board overlooks significant aspects of the Supreme Court's opinion in *Clawson*—i.e., that the Supreme Court "recognize[d] the possibility that the 1991 injury [for which Clawson was receiving total disability benefits] could resolve at some point in the future." *Clawson,* 813 A.2d at 640. The Supreme Court also recognized that the WCJ had determined that the 1992 injury, for which Clawson was not receiving total disability benefits only because he was receiving total disability benefits for the 1991 injury, "by itself would be totally disabling." *Id.* It remanded the matter with the direction that the matter ultimately be remanded to the WCJ to grant reinstatement and suspend benefits for that injury until such time as Clawson's entitlement to benefits for the 1991 injury changed. In so doing, it is apparent that the Supreme Court did not intend to "snuff out" or potentially extinguish Clawson's entitlement to total disability benefits for the 1992 injury. Instead, the Supreme Court purposefully attempted to preserve those benefits for the future, in light of the circumstance that the only reason that Clawson was not receiv-

---

**9.** The Supreme Court in *Clawson* quoted Judge Smith–Ribner's dissent in that case, wherein she discussed the approval of concurrent awards and the concept of "disability." *Clawson,* 813 A.2d at 639–40. The Supreme Court quoted as opining that our Court

    has approved concurrent awards only in circumstances where the original injury resulted in partial disability or where one of the awards was for specific loss.... As the

cases repeatedly state, disability is loss of earning power. Where a claimant is totally disabled already when he or she suffers another injury ... there is no loss of earning power at that time. For this reason the courts have not approved such an award. *Id.* (citing *L.E. Smith Glass Co. v. Workers' Comp. Appeal Bd. (Clawson)* (Pa.Cmwlth., No. 1857 C.D. 1999, filed December 28, 2001), slip op. at 4 (Smith–Ribner, J., dissenting)).

ing total disability benefits for the 1992 injury was that he was already receiving total disability benefits for the 1991 injury and could not stack those benefits.

In *Kane I*, there was no need for this Court to grant reinstatement for the 1999 injury and suspend benefits, because benefits were already suspended with respect to this injury due to the award of total disability benefits for the earlier 1995 injury. Thus, the basis for our denial was not lack of disability. Moreover, we, too, envisioned the future possibility of reinstatement of total disability benefits for Claimant based on the 1999 injury when we preserved for future disposition the issue of whether the running of the 500–week period should be tolled.

Here, the Board applied the holding of *Clawson* in a manner not intended by the Supreme Court. It used *Clawson* to cut-off entitlement to benefits, whereas the Supreme Court intended to limit the amount of the benefits to an amount "reflective of the claimant's loss in earning power," while preserving a claimant's entitlement to compensation for a disability for which he otherwise would be receiving compensation except for the prohibition on stacking of benefits. *See Clawson*, 813 A.2d at 639.

It is of utmost significance in this matter that Claimant suffered two totally disabling injuries, either of which would have entitled him to total disability benefits. Claimant, however, cannot receive benefits for both at the same time. In essence, the workers' compensation system requires a claimant to "choose one injury" and receive compensation for that totally disabling injury *in lieu of* receiving compensation for the other totally disabling injury at

that time. Should circumstances change, however, such that the loss in earning power from that injury for which a claimant is receiving benefits resolves or lessens, it makes no logical sense to ignore the circumstance that the claimant would have been receiving benefits for one totally disabling injury had he not been receiving benefits for another. Here, because Claimant received compensation for one totally disabling injury (the 1995 injury) *in lieu of* receiving compensation for the other totally disabling injury (the 1999 injury), Claimant must be permitted to seek reinstatement under Section 413(a) of the Act within three years after the date of the most recent payment of compensation received *in lieu of* compensation for the 1999 injury, to which he otherwise would have been entitled. *See Cozzone*, 73 A.3d at 542. Such an interpretation of Section 413(a) of the Act addresses the concerns of the Supreme Court in *Clawson* and respects the humanitarian aspects of the Act. Moreover, it is particularly appropriate here, where Claimant's suspension of benefits for his 1999 injury following Employer's cessation of business was never based on a recovery that allowed him to return to employment at his pre–1999 injury wages.

Applying the reasoning set forth above, Claimant's application for reinstatement was not time-barred under Section 413(a) of the Act, because it was filed within three years after the date of the last payment of compensation for his 1995 injury, which Claimant received *in lieu of* compensation for the 1999 injury. Accordingly, the order of the Workers' Compensation Appeal Board is reversed and the matter remanded to the Board with instruction that the Board remand the matter to the WCJ for further proceedings.[10]

---

**10.** Our holding is confined to the issue of the timeliness of Claimant's petition for reinstatement and whether Claimant's petition is

barred by collateral estoppel based on *Kane I*, because those are the only issues that Employer raised in its appeal to the Board and

## ORDER

AND NOW, this 25th day of June, 2015, the order of the Workers' Compensation Appeal Board is REVERSED, and the matter is REMANDED for further proceedings consistent with this opinion.

Jurisdiction relinquished.

## CONCURRING AND DISSENTING OPINION BY Judge BERNARD L. McGINLEY.

I concur with the majority's conclusion that:

[T]he Court in *Kane I* [*Kane v. Workers' Compensation Appeal Board (Glenshaw Glass Company)*, 940 A.2d 572 (Pa. Cmwlth.2007), appeal denied, [598 Pa. 770] 956 A.2d 437 (Pa.2008) ] determined that issues surrounding the effect of the suspension of Claimant's total disability benefits for his 1999 injury were not ripe for consideration, but that such issues may need to be litigated if and when Claimant's disability benefits for his 1995 shoulder injury ceased. Thus, it cannot be said that the issue now before the Court was decided in Kane I.

Opinion at 429.

I respectfully dissent to the majority's conclusion that "Claimant's application for reinstatement was proper under Section 413(a) of the Act, because it was filed within three years after the date of the last payment of compensation for his 1995 injury, which Claimant received *in lieu of* compensation for the 1999 injury."

I believe the Board correctly determined that the WCJ erred when she reinstated Claimant's total disability benefits as a result of his 1999 injury.

... Section 413(a) also provides that where compensation has been suspended based on earnings equal to or greater than the pre-injury AWW [average weekly wage], disability benefits may be reinstated at any time during the period for which partial disability is payable. Pursuant to Sections 306(b), 77 P.S. § 512, partial disability benefits are payable for up to 500 weeks. For the purposes of calculating the 500 weeks related to Section 413(a), that period begins on the date that total disability benefits are initially suspended. *Cytemps* [*Cytemp* ] *Specialty Steel v. WCAB (Servey)*, 811 A.2d 114 (Pa.Cmwlth.2002). Also, any periods of suspension are included as part of those 500 weeks. *Id. In other words, the 500 week period generally is not tolled during the time that disability benefits are suspended. Id.*

It has also been held that when a claimant has two injuries that are each, in and of themselves, totally disabling, a claimant may receive total disability benefits for only one injury, and *disability benefits for the second injury should be suspended until the entitlement to benefits for the first injury changes.* Kane (citing *L.E. Smith Glass Co. v. WCAB (Clawson)* [571 Pa. 594], 813 A.2d 634 (Pa.2002)).

After careful review, we must conclude that the WCJ erred in reinstating Claimant's total disability benefits related to his 1999 injury. As noted, reinstatement petitions must generally be filed within three years of the final payment of disability compensation related

---

now to this Court. Nothing in this opinion, therefore, should be interpreted to confer upon a claimant a right to reinstatement of benefits, either fully or partially, where the terms of a compromise and release compensate the claimant for future loss of earning

power. We do not address whether, if timely, Claimant's reinstatement petition is otherwise barred by the terms of the compromise and release. That question is simply not before us.

to the work injury. Section 413(a), 77 P.S. § 772.... However, the Act provides an exception in the event that the claimant's disability benefits have been suspended due to a return to work without wage loss, in which case the claimant has 500 weeks from the date that the total disability benefits were initially suspended. Section 306(b), 77 P.S. § 512; Cytemps.

Here, there is no dispute that Claimant received his last payment of disability benefits related to the 1999 injury on August 1, 1999, and his initial suspension of those benefits began on August 2, 1999. Therefore, if those benefits were suspended for any reason other than a return to work without wage loss, he had to file his reinstatement petition within three years of August 1, 1999, which ended on August 1, 2002. If those benefits were suspended based on a return to work without wage loss, he had 500 weeks from August 2, 1999 to file that Petition, which ended on March 2, 2009. Claimant filed the present Reinstatement Petition on September 29, 2010, which is outside both the three-year and 500-week periods.

Consequently, *the only way that Claimant's Reinstatement Petition would not be time barred by Section 413(a) is if neither the three-year or the 500-week periods applied or if one of those periods were somehow tolled by the fact that Claimant's disability benefits related to the 1999 injury should have been suspended based solely on his receipt of disability benefits for the 1995 injury rather than based on his initial return to work without wage loss on August 2, 1999.* We cannot conclude either that the ongoing suspension of Claimant's disability benefits for the 1995 injury, or that the Act provides for any tolling of the time limits provided in Section 413(a) under the present circumstances.

Board's Decision, June 18, 2013, at 5–6. (Emphasis added.)

I would affirm the Order of the Board.