# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Robert Mullarkey,                                    :
                              Petitioner              :
                                                     :
              v.                                      :    No. 884 C.D. 2023
                                                     :    Submitted: September 9, 2024
The Geo Group Inc. (Workers'                         :
Compensation Appeal Board),                          :
                              Respondent              :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE ANNE E. COVEY, Judge

**OPINION NOT REPORTED**

**MEMORANDUM OPINION BY**
**PRESIDENT JUDGE COHN JUBELIRER**                   **FILED:  October 22, 2024**

Robert Mullarkey (Claimant) petitions for review of the Order of the Workers' Compensation Appeal Board (Board) that reversed a Workers' Compensation Judge's (WCJ) Decision granting Claimant a reinstatement of wage loss benefits as of August 24, 2022, for a January 2004 disabling work-related injury (2004 Injury) sustained while employed by The Geo Group, Inc. (Employer).  On appeal, Claimant argues the Board erred because Claimant was entitled to those benefits based on a prior order by the same WCJ directing payment of benefits for the 2004 Injury once Claimant's entitlement to benefits for an injury sustained while working for Wackenhut Corrections Corp./G4S Secure Solutions USA Inc. (Wackenhut) (2001 Injury) ended.  Having settled his claim on the 2001 Injury for a lump sum via a Compromise and Release Agreement (C&R Agreement) entered with Wackenhut in 2022, Claimant contends Employer's payments for the benefits for the 2004 Injury

should have begun immediately without the need for him to file a Petition to Reinstate Benefits (Reinstatement Petition). Upon careful review, we affirm.

## I. BACKGROUND

The facts relevant to the present issue are generally without dispute. Claimant worked for Wackenhut as the fire and safety director at the Delaware County Prison when he sustained the 2001 Injury, which was in the nature of "left rotator cuff tendonitis with impingement syndrome, and disc herniations at the levels of C3-4, C4-5, C5-6, and C6-7." (12/30/2022 WCJ Decision (2022 Decision) at 3;[1] 8/28/2008 WCJ Decision (2008 Decision) Finding of Fact (2008 FOF) ¶ 8.[2]) While working as a corrections officer for Employer, Claimant sustained the 2004 Injury, which was a work-related aggravation of Claimant's "symptomatic congenital spondylolisthesis" in his low back. (2008 FOF ¶¶ 1, 26; 2022 Decision at 3 (describing the 2004 Injury as "an aggravation of [] Claimant's spondylolisthesis and pars articularis defect").) Claimant was awarded benefits for the 2001 Injury, which were suspended from June 7, 2001, until July 9, 2004, when Claimant became unable to perform his pre-injury position. (2008 FOF ¶ 11.) Claimant's 2004 Injury also was found to separately prevent Claimant from performing his pre-injury job. (*Id.* ¶¶ 27-28.) The WCJ described her 2008 Decision, granting a claim petition for the 2004 Injury, as awarding medical benefits and indemnity benefits[3] payable "after a cessation of [] Claimant's receipt of workers' compensation [(WC)] benefits for the" 2001 Injury. (2022 Decision at 3-4 & Finding of Fact (2022 FOF) ¶ 3.) It

---

[1] The 2022 Decision is Certified Record Item 4 and is attached to Claimant's brief.

[2] The 2008 Decision is Certified Record Item 11 and is also attached to Claimant's brief.

[3] The terms indemnity benefits, wage loss benefits, and disability benefits are interchangeable and refer to the monetary benefits an employer pays a claimant to replace the loss of earnings caused by a work-related injury.

appears that "American Home Assurance Company (AIG)" and/or "AIG Domestic Claims, Inc." were the insurers for Wackenhut and Employer. (*See* 2022 Decision at 3-4; 2022 FOF ¶ 1.)

Claimant continued to receive ongoing payments of total disability benefits related to the 2001 Injury until August 24, 2022, when a different WCJ granted a Petition to Seek Approval of a C&R Agreement (C&R Petition), approving the lump sum settlement between Claimant and Wackenhut in the amount of $200,000.00, with Claimant receiving $160,000.00, and his counsel receiving $40,000.00.[4] (2022 Decision at 5; 2022 FOF ¶ 5.) The C&R Agreement also stated that:

> Said payment constitutes a full and final settlement for all claims made for wage loss benefits, specific loss benefits, future medical benefits, attorney's fees, and interest related to Claimant's [2001 Injury], or any other work-related injuries Claimant may have sustained while in the employ of Wackenhut[], whether known to exist or not.

(2022 FOF ¶ 5c (quoting the C&R Agreement ¶ 19, Reproduced Record (R.R.) at 38a).) The C&R Agreement indicated that the parties to it, including "any named or implied [WC] insurance carrier," agreed that nothing therein "shall in any way limit Claimant's rights to any other claims for [WC] benefits for any [] injury date other than the [2001 Injury]." (*Id.* ¶ 5d (quoting the C&R Agreement ¶ 4, R.R. at 36a, 39a).)

On October 6, 2022, Employer filed a Petition to Review Compensation Benefit Offset (Review Petition) seeking "a credit for the settlement funds from the [2001 Injury] and against any of [] Claimant's future wage loss benefits for the [2004 Injury]." (2022 FOF ¶ 1.) At the hearing on the Review Petition, Employer

---

[4] The C&R Agreement also provided for the payment of related reasonable, necessary, and causally-related medical bills and established a structured annuity for future medical expenses.

3

explained its position was that the $160,000.00 Claimant received in the C&R Agreement was "towards [Claimant's] future wage loss" and was, essentially, an "accelerat[ion of] his disability payments via lump sum." (*Id.* ¶ 6a; *see also* R.R. at 14a.) Employer sought "essentially a legal opinion or order as to its entitlement to a credit for that lump sum against any future earnings that were owed in the 2004 claim," upon which it had not yet started paying as of November 9, 2022. (2022 FOF ¶ 6a, b.) Claimant responded that he bore no burden of proving his entitlement to benefits for the 2004 Injury, as benefits had been awarded in the 2008 Decision, and, therefore, he was not going to file a Reinstatement Petition. (*Id.* ¶ 6c, d.)

> Upon review, the WCJ took
>
> judicial notice that [Employer] didn't file a Petition to Terminate Compensation Benefits and/or a Petition to Modify Compensation Benefits with respect to [] Claimant's [2004 Injury] at any time since the filing date of the [C&R] Petition . . . for the [2001 Injury].

(*Id.* ¶ 7.) Based on the record and the parties' arguments, the WCJ concluded:

> [] When two injuries are, in and of themselves, totally disabling, a [c]laimant may receive benefits for only one injury and when the second injury occurs, the insurer responsible for payment of benefits for the first injury is continually liable. *See Kane v.* [*Workers' Comp. Appeal Bd.*] *(Glenshaw Glass)*, 940 A.2d 572 (Pa. Cmwlth.[] 2007) [(*Kane I*); *L.E. Smith Glass Co. v.* [*Workers' Comp. Appeal Bd.*] *(Clawson)*, 813 A.2d 634 ([Pa.] 2002). Since [] Claimant's benefits for the second injury should be put in a suspension status until his entitlement to benefits for the first injury changes and since [] Claimant's entitlement to benefits for the first injury changed after August 23, 2022, specifically the date of the approval of the [C&R] Petition . . . , [] Claimant had an entitlement to [WC] indemnity benefits for the second injury on and since August 24, 2022[,] and until alteration of those benefits in accordance with the terms of the [ ] Workers' Compensation Act [(Act)].[5] *See Clawson.*

---

[5] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710.

> [] A [WCJ] may, at any time, modify, reinstate, suspend, or terminate . . . an award of . . . [a WCJ], upon petition filed by either party . . . upon proof that the disability of an injured employee has increased, decreased, recurred, or has temporarily or finally ceased. . . . Since the disability from the first work injury . . . was extinguished on August 23, 2022[,] as a result of the ruling on the [C&R] Petition . . . [] Claimant's [WC] indemnity benefits . . . for the [2004 Injury] are reinstated from August 24, 2022[,] and until alteration of them in accordance with the terms of the . . . Act by operation of law. *See Kane v.* [*Workers' Compensation Appeal Board*] *(Glenshaw Glass)*, 119 A.3d 424 (Pa. Cmwlth.[] 2015) (*Kane II*); *Cozzone v.* [*Workers' Comp. Appeal Bd.*] (*Pa. Mun./E*[.] *Goshen Twp.*), 73 A.3d 526 (Pa.[] 2013).

(2022 Decision, Conclusions of Law (2022 COL) ¶¶ 3-4.) Citing the C&R Agreement's language that nothing therein "would limit [] Claimant's rights to any other claims for [WC] benefits for any other injury," and noting that AIG was the carrier for both the 2001 and 2004 Injuries, the WCJ held that Employer and AIG "ha[d] no right to an offset for the paid amounts in accordance with the terms of the [C&R] Agreement . . . and against the due amounts for indemnity benefits for the [2004 Injury] from and after August 24, 2022." (*Id.* ¶ 5.) Thus, the WCJ denied the Review Petition and reiterated Employer was liable for the payment of, *inter alia*, indemnity benefits to Claimant for the 2004 Injury, along with statutory interest on all deferred amounts of benefits. (*Id.* ¶¶ 5-6.)

Employer appealed to the Board, asserting the WCJ erred in interpreting the C&R Agreement as reflecting the cessation of Claimant's disability from the 2001 Injury absent evidence of a change in his condition for that injury or for the 2004 Injury. Employer also argued the WCJ erred in interpreting the Act to hold that Claimant was entitled to immediate payment of indemnity benefits for the 2004 Injury and that Employer was not entitled to a credit against those benefits for the $160,000.00 identified in the C&R Agreement as being for Claimant's future lost

wages. (R.R. at 5a-6a.) The Board agreed in part, reversing the WCJ's reinstatement of Claimant's benefits for the 2004 Injury. The Board held that the acceleration of Claimant's receipt of his future loss of earnings through the C&R Agreement did not alter the fact of his total disability resulting from the 2001 Injury remained until Claimant demonstrated a change in his condition. (Board Opinion (Op.) at 7.[6]) The Board reasoned, citing *George v. Workers' Compensation Appeal Board (Conway Central Express)*, 871 A.2d 310 (Pa. Cmwlth. 2005), that entering into a settlement for a lump sum payment, rather than the payment of weekly benefits, would "not entitle a claimant to additional total disability benefits from another employer or insurer without a change in condition." (Board Op. at 7-8.) Because Claimant had not established that "his earning power [wa]s once again affected by his disability," which was "a continuation of that which arose from his original claim," (*id.* at 8 (citing *Bufford v. Workers' Compensation Appeal Board (North American Telecom)*, 2 A.3d 548 (Pa. 2010))), the Board concluded the WCJ erred in ordering reinstatement of Claimant's 2004 Injury benefits. As for the Review Petition, the Board held any claim for credit based on the C&R Agreement's lump sum was not yet ripe as Employer had not begun payment of benefits and the reinstatement of those benefits was reversed. Claimant now petitions this Court for review.[7]

## II. DISCUSSION

### A. *Parties' Arguments*

Claimant argues that when an injured worker sustains two injuries, the worker is entitled to WC benefits in "an amount no greater than the maximum amount

---

[6] The Board's Opinion is Certified Record Item 7 and is attached to Claimant's brief.

[7] This Court's scope of review in WC appeals "is limited to determining whether necessary findings of fact are supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated." *Elberson v. Workers' Comp. Appeal Bd. (Elwyn, Inc.)*, 936 A.2d 1195, 1198 n.2 (Pa. Cmwlth. 2007).

payable for one injury" and argues the WCJ and the Board interpreted Section 306(b)(1) of the Act, 77 P.S. § 512,[8] differently to reach different results. Claimant argues the WCJ read the provision in conjunction with the C&R Agreement to conclude Claimant was entitled to the immediate reinstatement of benefits for the 2004 Injury, whereas the Board interpreted the provision such that Claimant had to prove his earning power was again affected by his 2004 Injury before reinstatement could occur. (Claimant's Brief (Br.) at 18.) Claimant asserts that Wackenhut and Employer "are either the same company or named successors in interest," and, therefore, Employer is bound by the C&R Agreement, including the language therein indicating it would not affect Claimant's entitlement to WC benefits for any other injury, and the Board's reliance on *George* is misplaced, as that case involved two different employers. (*Id.* at 8 n.2, 20-21, 24-26.) According to Claimant, this

---

[8] Section 306(b)(1) states:

For disability partial in character caused by the compensable injury or disease (except the particular cases mentioned in clause (c)) sixty-six and two-thirds per centum of the difference between the wages of the injured employe, as defined in [S]ection 309, [77 P.S. § 582,] and the earning power of the employe thereafter; but such compensation shall not be more than the maximum compensation payable. This compensation shall be paid during the period of such partial disability except as provided in clause (e) of this section, but for not more than five hundred weeks. Should total disability be followed by partial disability, the period of five hundred weeks shall not be reduced by the number of weeks during which compensation was paid for total disability. The term "earning power," as used in this section, shall in no case be less than the weekly amount which the employe receives after the injury; and in no instance shall an employe receiving compensation under this section receive more in compensation and wages combined than the current wages of a fellow employe in employment similar to that in which the injured employe was engaged at the time of the injury.

77 P.S. § 512. It is unclear why Claimant cites Section 306(b)(1), which relates to disabilities "partial in nature," *id.*, because there is no indication that Claimant has ever been paid partial disability benefits, and neither the WCJ nor the Board cited this provision in support of their respective decisions.

7

matter is akin to a situation where a claimant returns to a modified-duty position and is subsequently laid off, that claimant is entitled to a presumption that the claimant's disability, i.e., loss of earning power, is related to the work injury. (*Id.* at 19 (citing *Klarich v. Workers' Comp. Appeal Bd. (RAC's Ass'n)*, 819 A.2d 626, 629 (Pa. Cmwlth. 2003)).) Claimant asserts that, in reversing the 2022 Decision, the Board disregarded that Employer did not establish Claimant did not continue to suffer a work-related disability due to the 2004 Injury, "Claimant's [e]mployer was the same in 2001 and 2004," and the 2008 Decision "collaterally estops any litigation on the issue" and "mandated that benefits be reinstated 'after a cessation of [] Claimant's receipt of'" WC benefits for the 2001 Injury. (*Id.* at 19-20.) Claimant also asserts the Board misapplied the precedent it cited in support as those cases involved the issue of "stacking" WC benefits for separate injuries or, in the case of *Clawson*, support the immediate reinstatement of his WC benefits for the 2004 Injury.

Employer responds, initially, that Claimant relies on facts that are not supported by the record by asserting that Wackenhut and Employer are the same entity or successors in interest, pointing out Claimant cites only Wikipedia to support this factual contention. Nothing in the record in this matter, or in the course of the 20 years of litigation of these injuries, supports this fact or raised this issue, Employer argues.[9] Therefore, Employer asserts, the Court must reject Claimant's arguments predicated on the employers being the same for the 2001 and 2004 Injuries, including that Employer, and its third-party administrator, are bound by the C&R Agreement.

---

[9] Employer notes that Claimant's counsel in this appeal differs from his counsel who has represented him at the WC level for 20 years and that Claimant's current arguments are "inconsistent with the decades-long history of this case." (Employer's Br. at 13-14 n.4.)

8

On the merits of Claimant's remaining arguments, Employer argues the Board correctly held that Claimant's reliance on the 2008 Decision was misplaced, as that required any reinstatement to be in accordance with the Act, and did not, by itself, mandate a change in Claimant's benefit status upon the voluntary settlement of the 2001 Injury. According to Employer, the Board's Opinion, requiring Claimant to show that his loss of earnings, i.e., disability, was now attributable to the 2004 Injury, not the 2001 Injury, is consistent with the Act and the precedent cited by the Board, as well as with *Westmoreland Regional Hospital v. Workers' Compensation Appeal Board (Stopa)*, 789 A.2d 413 (Pa. Cmwlth. 2001). The C&R Agreement, Employer posits, may have addressed Claimant's right to receive **ongoing** WC benefits for the 2001 Injury, but it did not address or resolve Claimant's "disability" associated with the 2001 Injury, as Claimant remained unable to work his pre-injury position due to that injury both before and after the C&R Agreement's approval. Employer argues it likewise did not reflect that Claimant's "disability" related to the 2004 Injury increased. Having not alleged or proven a change in condition as to either injury or in his earning capacity as to the 2001 Injury, Employer argues Claimant is not entitled to the reinstatement of the 2004 Injury benefits based on the C&R Agreement and 2008 Decision alone.

*B. Analysis*

We begin with Claimant's assertion that Employer and Wackenhut are the same entity or are successors in interest. Claimant provides no record citation to support this claim; instead, relying on, as Employer notes, a Wikipedia entry. (Claimant's Br. at 8 n.2.) "It is beyond cavil that an appellate court is limited to considering only those facts which have been duly certified in the record on appeal." *Pugh v. Workers' Comp. Appeal Bd. (Transpersonnel, Inc.)*, 858 A.2d 641, 645 n.7

9

(Pa. Cmwlth. 2004). As Claimant's factual assertion is dehors the record, it will not be considered, *id.*, nor will Claimant's arguments related thereto, including that his scenario is akin to an injured worker who returns to the same employer on modified duty who is subsequently laid off, be considered.

We now turn to Claimant's assertion that he had a right to immediate reinstatement of his indemnity benefits for the 2004 Injury, which is predicated on his reading of the 2008 Decision. That decision, however, must be read in the context as one on remand from the Board. In remanding, the Board stated, relevantly:

> [W]e do not know whether or when Claimant recovered from his 2001 [] [I]njury at which time Claimant's loss of earnings could be attributed to his 2004 [] [I]njury. We will therefore amend our Order to state that the . . . [o]rder . . . granting Claimant's Claim Petition [for the 2004 Injury] is hereby affirmed and the matter is remanded to the WCJ **for a determination as to when Claimant's 2001 [] [I]njury resolved and Claimant's loss of earnings can be attributed to his disability from the 2004 [] [I]njury.**

(2008 FOF ¶ 5 (quoting Board's 12/20/07 Order) (emphasis added).) Thus, the Board determined, "**[Employer] shall be entitled to a suspension of benefits for the period during which Claimant's loss of earnings was not due to Claimant's [2001 Injury]**." (*Id.* ¶ 4 (quoting Board's 12/20/07 Order) (emphasis added).) On remand, the WCJ did not find that Claimant's 2001 Injury had resolved or that Claimant's continued loss of earnings remained associated with the 2001 Injury, not the 2004 Injury. (*Id.* ¶¶ 11, 29.) Further, while the 2008 Decision indicated that Employer would be liable for paying total disability benefits for the 2004 Injury "after a cessation of [] Claimant's receipt of [WC] [b]enefits for the" 2001 Injury, it also required that this payment be done "**in accordance with the terms of the . . .**

10

**[Act]**." (2008 Decision COL ¶ 4 (emphasis added).) That 2008 Decision also authorized Employer to suspend the benefits related to the 2004 Injury from the date of that injury "**in accordance with the terms of the . . . [Act]**." (*Id.* (emphasis added).)

For purposes of the Act, the term "disability is synonymous with loss of earning power." *Westmoreland Reg'l Hosp.*, 789 A.2d at 416. "[C]ourts have long held, that, short of death, a claimant can never be more than totally disabled." *Id.* at 417. The Board found *Clawson*, *George*, and *Kane II* instructive as to a claimant's receipt of indemnity benefits when there are separate, disabling work-related injuries, as do we.

In *Clawson*, the claimant sustained a work-related injury for which he received total disability benefits until he returned to work without restrictions or wage loss. Thereafter, the claimant sustained another work-related injury, resulting in the payment of total disability benefits for that injury. When the claimant later sustained a recurrence of the original injury, he was "already receiving total disability benefits for the [subsequent] injury and suffered no additional wage loss due to this recurrence" as he had no earning power at that time. *Clawson*, 813 A.2d at 639. Because the claimant was receiving total disability benefits for the second injury, the Supreme Court reasoned the recurrence of the first injury was not a disabling injury under the Act, and, therefore, the claimant was not entitled to indemnity benefits for the recurrence. "However, [the Supreme Court] recognize[d] that the [**second injury**] **could resolve at some point in the future**" and the recurrence would, then, "by itself [] be totally disabling." *Id.* at 640 (emphasis added). Therefore, the Supreme Court held it was proper to grant the reinstatement petition for the recurrence and then "suspend benefits for that injury **until such time**

11

**as [the claimant]'s entitlement to benefits for the [subsequent] injury changes**." *Id.* (emphasis added).

In *George*, the claimant sustained two disabling work-related injuries with separate employers and partial disability benefits associated with the injuries were apportioned between the two employers. A C&R agreement related to one of the injuries, which provided the claimant a lump sum in exchange for a release of all medical and wage loss claims against that employer, was approved. Thereafter, the claimant filed a reinstatement petition asserting that he was entitled to the reinstatement of total disability benefits as to his other work injury based solely on the C&R agreement, rather than any change of condition for the two work-related injuries. In affirming the denial of the reinstatement petition, this Court rejected the claimant's arguments "that his earning power [was] once again adversely affected by his disability through no fault of his own[,] [] that the disability giving rise to his [unsettled] claim continue[d,]" and that, because the second employer that was "100% responsible for [the c]laimant's disability . . . [was] no longer in the case," the other employer, also responsible for 100% of the disability, was now "responsible to pay the full amount of [the c]laimant's total disability compensation." *George*, 871 A.2d at 812. Observing that "there is nothing in [WC] law or civil law that sanction[ed]" that relief, we held there was no "entitle[ment] to a reinstatement of total disability payments [from the non-settling employer] solely on the grounds that [the claimant] voluntarily extinguished his claim against [the other employer]." *Id.*

Finally, in *Kane II*, which involved a claimant who suffered two, separate disabling work injuries and received total disability benefits for one with the benefits for the second injury being suspended, we observed that "**[s]hould circumstances**

12

**change**, [] such that the **loss of earning power** from that injury for which a claimant is receiving benefits **resolves or lessens**," the claimant is "**permitted to seek reinstatement under Section 413(a)**," 77 P.S. § 772, of the benefits "to which [the claimant] otherwise would have been entitled." 119 A.3d at 432 (emphasis added). Notably, the claimant in *Kane II* filed a petition to reinstate the suspended benefits from his second work injury following the settlement of his claim on the first work injury via a C&R agreement.

In these cases, the total disability benefits for one of the injuries was in suspension status or, in the case of *George*, payment was split between the responsible employers, and the courts recognized that when WC benefits are in suspension status, they must be reinstated through the process contemplated by the Act. This was expressly stated in both *George* and *Kane II*, which explained, respectively, that reinstatement of total responsibility for the indemnity benefits was not automatic based on the settlement of one of the claims and had to be sought through the processes set forth in Section 413(a). Even the 2008 Decision required that the suspension of Claimant's disability benefits for the 2004 Injury and Employer's subsequent responsibility for payment of those benefits would be "in accordance with the . . . [Act]." (2008 Decision COL ¶ 4.)

Section 413(a) of the Act allows a WCJ to

at any time, modify, **reinstate**, suspend, or terminate . . . an award . . . upon petition filed by either party . . . **upon proof that the disability** of an injured employe **has increased**, decreased, recurred, or has temporarily or finally ceased . . . . Such modification, **reinstatement**, suspension, or termination shall be made **as of the date** upon which it is shown **that the disability of the injured employe has increased,** decreased, recurred, or has temporarily or finally ceased . . . .

13

77 P.S. § 772 (emphasis added). Under this provision, two prerequisites must occur before a WCJ can modify an award, which would include reinstating WC benefits: (1) there must be a petition filed; and (2) there must be proof reflecting a change in the claimant's disability, i.e., loss of earning power, associated with the work-related injury at issue. To reinstate disability benefits, a **claimant** must "prove that his or her earning power is once again adversely affected by his or her disability, and that such disability is a continuation of that which arose from his or her original claim." *Bufford*, 2 A.3d at 558.

Based on the above principles and precedent, we cannot say the Board erred in reversing the WCJ's decision granting the reinstatement of Claimant's WC benefits. Although there was a petition before the WCJ, Claimant did not present evidence as to whether his current loss of earnings (disability) was related to the 2004 Injury, rather than the 2001 Injury. Instead, Claimant relied solely on the C&R Agreement and his reading of the 2008 Decision's language to argue, essentially, that his right to the immediate reinstatement of the total disability benefits for the 2004 Injury was automatic.

However, there has been no finding that Claimant has regained any earning power related to the 2001 Injury to his neck and left shoulder or that his inability to perform his job due to those injuries has resolved. Instead, Claimant and Wackenhut, with the approval of a different WCJ, agreed to accelerate Claimant's receipt of wage loss benefits for the 2001 Injury into a lump sum amount and to release Wackenhut from its obligation to pay those benefits on a weekly basis. Accepting Claimant's arguments would allow him to receive wage loss benefits to replace the wage loss associated with the 2001 Injury, which remains – on this record – a disabling injury, through the lump sum payment, while **also** receiving benefits

14

to replace the wage loss associated with the 2004 Injury to his low back. The problem is that Claimant can suffer only **one wage loss**, a fact acknowledged by the WCJ when she initially suspended the wage loss benefits for the 2004 Injury. Ultimately, Claimant's position is not supported by Section 413(a) or the above precedent, both of which require evidence of a change in disability to reinstate suspended wage loss benefits. The 2008 Decision, itself, acknowledged that the payment and suspension of the benefits was subject to the Act's requirements. Having not met the burden of proof as set forth in Section 413(a) and the above precedent, Claimant was not entitled to the reinstatement of his total disability benefits based on the 2004 Injury.

## III. CONCLUSION

For the foregoing reasons, we agree with the Board's determination that the reinstatement of Claimant's disability benefits for the 2004 Injury was in error and that the 2022 Decision must be reversed. Accordingly, the Board's Order is affirmed.

_____
**RENÉE COHN JUBELIRER,** President Judge

15

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Robert Mullarkey,                          :
                 Petitioner      :
                              :
          v.                          :   No. 884 C.D. 2023
                              :
The Geo Group Inc. (Workers'               :
Compensation Appeal Board),                :
                 Respondent      :

## O R D E R

**NOW**, October 22, 2024, the Order of the Workers' Compensation Appeal Board, entered in the above-captioned matter, is **AFFIRMED**.

 

                          _____

                          **RENÉE COHN JUBELIRER,** President Judge